STATE OF NORTH CAROLINA v. LAWRENCE JEROME HARRIS
ALIAS JOE HARRIS

No. 99

(Filed 29 January 1976)

1. **Homicide § 24— instructions — accident — burden of proof**
   The trial court in a homicide case erred in placing upon defend-
   ant the burden of satisfying the jury that decedent's death was the
   result of an accident since accident is not an affirmative defense.

2. **Criminal Law § 168— burden of proof — erroneous instruction — sub-
   sequent correct instruction**
   An erroneous instruction on the burden of proof is not ordinarily
   corrected by subsequent correct instructions upon the point.

DEFENDANT appeals from judgment of *Falls, J.,* 6 January
1975 Schedule "C" Session, MECKLENBURG Superior Court.

The bill of indictment is drawn in conformity with the
requirements of G.S. 15-144 and charges defendant with the
murder of Richard Evans Weddle on 10 September 1974 in
Mecklenburg County. Upon the call of the case, however, the
district attorney announced he would not seek a first degree
murder conviction but would ask for defendant's conviction of
murder in the second degree.

The State's evidence tends to show that Keith Blackwell,
Gary Gillespie and Richard Weddle, the deceased, shared a
three-bedroom apartment at 1420 Santera Apartments in the
City of Charlotte. On 10 September 1974 at approximately 6
p.m., Keith Blackwell, in a telephone conversation with one
Randall Simmons, offered to sell Simmons about two pounds
of marijuana and advised him to pick it up around 10:30 p.m.
that night. Pursuant to that conversation, Randall Simmons
drove the defendant Lawrence Jerome Harris and one Eddie
Staten to Blackwell's apartment about 10 p.m. En route, ac-
cording to the testimony of Randall Simmons, Staten and the
defendant discussed a plan to rob Keith Blackwell of the mari-
juana. Simmons, who did not participate in the scheme, waited
outside in the car while defendant and Staten entered the apart-
ment with Keith Blackwell.

While defendant waited in the living room, Keith Blackwell
took Eddie Staten into Blackwell's bedroom where the mari-
juana was hidden. After viewing a sample of the marijuana,

Staten returned to the living room and talked privately with defendant Harris for five to ten minutes. The three men then returned to the bedroom where Keith Blackwell prepared to weigh the marijuana on a set of scales. Two visitors at the apartment, David Bolt and Harris Grant, remained in the living room. As Keith Blackwell got on his knees to set up the scales, defendant Harris pulled a small revolver from his pocket, placed it against Keith Blackwell's right temple, and said, "Just be cool and take it easy and nothing will happen." He commanded Blackwell to lie on the floor, which he did. He told Eddie Staten to take Blackwell's shotgun, which was lying on the floor of the bedroom, go to the living room and bring everyone else into the bedroom. After this order was executed, David Bolt was forced to lie on his stomach across Keith Blackwell's shoulders. Then Harris Grant was tied up with an electric cord and forced to lie on the floor. Defendant Harris and Eddie Staten then started looking for the marijuana. Staten slapped Harris Grant and said: "If you don't tell us where the rest of it is, you will get some more of this."

At that time Richard Weddle, who was in his own bedroom with a girl named Emily Kennedy, opened his bedroom door to ascertain what was going on. Defendant Harris turned his pistol on Weddle and said, "Freeze, don't move." Weddle moved his hand and arm, apparently in an attempt to push his girl friend Emily Kennedy away from the door, and defendant shot Weddle in the chest with the pistol. Eddie Staten grabbed the shotgun and the marijuana and, followed by defendant Harris, left the apartment.

The foregoing narration of the State's evidence is derived from the testimony of Randall Simmons and three eyewitnesses to the shooting—Keith Blackwell, David Bolt and Emily Kennedy.

Dr. Hobart Wood performed an autopsy on the body of Richard Weddle and expressed the opinion that Weddle died as a result of a gunshot wound in the chest.

Police officers testified that defendant was apprehended in Montgomery, Alabama on or about 29 September 1974 and was extradited to stand trial for the murder of Richard Weddle.

Defendant testified as a witness in his own behalf. He stated that he and Eddie Staten accompanied Randall Simmons to Keith Blackwell's apartment a few minutes after 10 p.m. on

the night of 10 September 1974. Simmons wanted defendant and Eddie Staten to finance him in the purchase of about two and a half pounds of marijuana from Keith Blackwell. Eddie Staten, not Simmons, was driving the car. Shortly after Staten parked the car at the Santera Apartments, a van pulled up and three white men got out. One of the men said he was Keith Blackwell. After conferring with Keith Blackwell, Eddie Staten informed defendant that the price for the marijuana was about $380.00. Defendant stated they only had $350.00, and Keith Blackwell said, "Well, that is all right. Just come on in the apartment. I have got something to show you." Thereupon, defendant and Eddie Staten accompanied Keith Blackwell into the apartment. Two men were in the living room watching television. Keith and Eddie went down a hallway and entered a bedroom and called defendant who joined them. Defendant saw no marijuana and observed no scales in the bedroom. He did see a shotgun on the floor and asked Keith Blackwell if it was normal to leave shotguns lying around in his house on the floor. Blackwell replied, "Yes, it is normal." Defendant asked whether the gun was loaded and Blackwell said, "Yes it is loaded." Then Keith Blackwell pulled a pistol, pointed it at defendant and said, "This gun is loaded, too. . . . Don't try nothing."

Defendant describes the events which followed in this language: "So at this time the bedroom that I had faced coming down the hall, the door opened, so I saw a figure from a shadow hit the wall and at the same instant I crashed into Keith. I hit Keith, sort of like a low projectile. The gun discharged. When the gun discharged, it was in Keith's hands. Keith and I had a struggle. I took the gun from him. After I took the gun from him there was this dude lying in the hall. He had been shot. He was a white man and I did not know him. Then I noticed a female in the bedroom. She didn't see me. I just saw just a figure of a body. She was running towards some kind of—must have been a closet. She was fully dressed. The dude who got shot was just lying on the floor moaning and groaning, so I told Eddie to get the shotgun and let's go. Then we left."

Defendant denied involvement in any conversation on the way to the Santera Apartments "about trying to steal the marijuana." Defendant said he and Eddie took Randall Simmons home, went to the Bahama Apartments to pick up some clothes, and prepared to leave town. "We went to Boone, North Carolina, because I know some people up there. We stayed in Boone

approximately three days. Then we came back to Charlotte. Then on September 28, or 27 or 28, it was a Friday, I went to Alabama. The police picked me up in Alabama, Montgomery, Alabama."

The jury convicted defendant of murder in the second degree and he was sentenced to life imprisonment. Defendant's appeal was inadvertently docketed in the Court of Appeals but duly transferred to this Court by order of the Chief Justice. Errors assigned will be discussed in the opinion.

*Peter A. Foley, Attorney for defendant appellant.*

*Rufus L. Edmisten, Attorney General; Jesse C. Brake, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

We overrule defendant's assignments of error based on his contentions that (1) the court failed "to give equal stress to the State and defendant" in summarizing the evidence, (2) the court erred in charging on *flight* as bearing on defendant's guilt or innocence, and (3) the court erred in failing to charge on the law of self-defense. The court's recapitulation of the evidence was in substantial compliance with G.S. 1-180. The court's instruction on flight was based on evidence reasonably tending to show that defendant fled the jurisdiction immediately following the crime. Defendant's version of the killing does not invoke legal principles applicable to a killing in self-defense. We therefore put aside these assignments without further discussion and go directly to the question raised in defendant's remaining assignment of error.

[1] Defendant contends the court committed prejudicial error in its charge by placing upon him the burden of satisfying the jury that Weddle's death was the result of an accident. This constitutes the basis for defendant's final assignment of error and requires examination of the following challenged portions of the charge:

> "If the State of North Carolina proves beyond a reasonable doubt that the defendant intentionally killed Weddle with a deadly weapon or intentionally inflicted the wound upon Weddle with a deadly weapon that proximately caused his death, the law raises two presumptions: First, that the killing was unlawful and, second, that it was done with

malice. Nothing else appearing, the defendant would be guilty of second degree murder because a killing with a deadly weapon raises a presumption of malice, raises a presumption that it was done with malice rather.

*Now, in order to excuse it altogether on the grounds of accident, members of the jury, the burden is upon the defendant to satisfy you, not by the greater weight or not beyond a reasonable doubt, but simply to satisfy you that this death of Weddle was an accident.*" (Emphasis added.)

After defining the word "accident" and summarizing for the jury the three elements necessary to render a homicide excusable by reason of accident (absence of intent to do harm, lawfulness of the act from which death results, and proper precautions to avoid mischief), the court charged the jury as follows:

"Now, members of the jury, bearing in mind that the burden of proof rests upon the State to establish the guilt of this defendant Harris beyond a reasonable doubt, I charge you that if you find from this evidence that the killing of the deceased was accidental, that is, that this Weddle's death was brought about by an unknown cause or that it was from an unusual or unexpected event from a known cause, and you also find that the killing of the deceased was unintentional, that at the time of the homicide the defendant was engaged in the performance of a lawful act without any intention to do harm and that at the time he was using proper precautions to avoid danger, if you find these to be the facts, remembering that the burden is upon the State, then I charge you that the killing of the deceased was a homicide by misadventure and if you so find, it would be your duty to render a verdict of not guilty as to this defendant."

Assertion by the accused that a killing with a deadly weapon was accidental is in no sense an affirmative defense shifting the burden to him to satisfy the jury that death of the victim was in fact an accident. *State v. Phillips,* 264 N.C. 508, 142 S.E. 2d 337 (1965). Defendant's contention here that Weddle's death resulted from accident "was a denial that he committed the crime charged, and such contention is not an affirmative defense which resulted in the imposition of any burden of proof upon him. The burden remained upon the State

to prove each and every element of the crime charged beyond a reasonable doubt." *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24 (1975); *accord, State v. Crews,* 284 N.C. 427, 201 S.E. 2d 840 (1974); *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129 (1971); *State v. Woods,* 278 N.C. 210, 179 S.E. 2d 358 (1971); *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969); *State v. Fowler,* 268 N.C. 430, 150 S.E. 2d 731 (1966); *State v. Williams,* 235 N.C. 752, 71 S.E. 2d 138 (1952). *See generally* Annot., Homicide: Burden of Proof on Defense that Killing was Accidental, 63 A.L.R. 3d 936 (1975).

[2] In light of these legal principles it is quite apparent that the italicized portion of the charge to the jury above quoted in this case was erroneous in that it placed the burden on defendant to satisfy the jury that the death of Weddle was an accident. It is equally apparent that the last quoted paragraph from the charge is a correct statement of the law. "It has been uniformly held that where the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part. This is particularly true when the incorrect portion of the charge is the application of the law to the facts. [Citations omitted.] A new trial must also result when ambiguity in the charge affords an opportunity for the jury to act upon a permissible but incorrect interpretation." *State v. Parrish,* 275 N.C. 69, 165 S.E. 2d 230 (1969); *accord, State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971). The jury cannot be expected to know which of two conflicting instructions is correct. *State v. Holloway,* 262 N.C. 753, 138 S.E. 2d 629 (1964). It must be assumed on appeal that the jury was influenced by that portion of the charge which is incorrect. *State v. Starnes,* 220 N.C. 384, 17 S.E. 2d 346 (1941). Moreover, an erroneous instruction on the burden of proof is not ordinarily corrected by subsequent correct instructions upon the point. *State v. Faulkner,* 241 N.C. 609, 86 S.E. 2d 81 (1955); *see State v. Grayson,* 239 N.C. 453, 80 S.E. 2d 387 (1954); *State v. Floyd,* 220 N.C. 530, 17 S.E. 2d 658 (1941); *State v. Patterson,* 212 N.C. 659, 194 S.E. 283 (1937).

For the reasons stated, the judgment is vacated and the case remanded to the Superior Court of Mecklenburg County for a

New trial.