STATE OF NORTH CAROLINA v. LARRY JAMES MEADOWS

No. 89A81

(Filed 5 October 1982)

1. **Criminal Law § 62— polygraph examination—stipulation not adhered to—evidence inadmissible**

　　　The trial court erred in admitting into evidence the results of a polygraph examination administered to defendant since a stipulation authorizing the examination was not complied with. The stipulation required both the prosecuting witness and defendant to be given "similar" tests "under the same terms [and] conditions," therefore, where one party was given two completed tests which were reliably administered on a reliable machine, the stipulation required that the other party be given two tests at approximately the same time and place on the same machine by the same operator.

2. **Criminal Law § 62— polygraph examination—instruction concerning erroneous**

　　　Where evidence of a polygraph examination was admitted into evidence, the trial court erred in stating to the jury that it "may consider it along with all the other facts and circumstances in determining the defendant's guilt or innocence . . . ," since results of a polygraph examination cannot be used to show a defendant's guilt or innocence of the crime charged.

3. **Burglary and Unlawful Breakings § 5— element of lack of consent—sufficiency of evidence**

　　　Where defendant defended his burglary charge at trial upon the theory that the prosecuting witness consented for him to enter her home, the prosecuting witness presented evidence that defendant entered without her consent, and the trial court properly instructed the jury on this issue, the defendant could not on appeal seek relief upon the theory that the prosecuting witness's husband gave defendant permission to enter the home. Further, the evidence did not support the alternate theory.

　　　Justices MITCHELL and MARTIN did not participate in the consideration or decision of this case.

BEFORE *Judge Ronald W. Howell,* presiding at the 10 November 1980 Criminal Session of MECKLENBURG Superior Court, and a jury, defendant was found guilty of first degree burglary and second degree rape. He was sentenced to life imprisonment on the burglary charge and appeals of right pursuant to G.S. 7A-27(a). On the rape charge, he was sentenced to prison for a minimum of twenty and a maximum of forty years; he appealed, and we allowed his motion to by-pass the Court of Appeals on 29 July 1981.

*Rufus L. Edmisten, Attorney General, by Alfred N. Salley, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by James H. Gold, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

In this appeal defendant's dispositive assignments of error relate to the admissibility of polygraph examination results and jury instructions pertaining to this evidence. We find merit in these assignments and order a new trial. We find no merit in defendant's contention that the burglary charge should have been dismissed or that the jury instructions on this offense were erroneous. Other errors assigned are not likely to arise at a new trial; therefore they do not merit discussion.

The state's evidence tends to show:

Valerie Moore, the alleged victim, lived with her husband, Mike, and three children in a trailer home five miles east of Lincolnton. On the night of 14-15 July 1980, Valerie Moore was at home with her children. Mike Moore was not there. At around 3:30 a.m. she was awakened by defendant calling her name. Defendant, a friend of Mike's, had gained entry into the residence while Valerie was asleep. He told Valerie that Mike had showed him how to get in the trailer and had told him to come there and wait for him.

Valerie ordered defendant to leave, whereupon he pulled a butcher knife and told her that if she screamed he would cut her throat. He then forced her to leave the residence and walk to a corral in the woods. There was a cot or mattress in the corral. Defendant told Valerie that Mike had been sleeping with his wife,

that he was doing this to spite Mike, that he did not want to hurt her but wanted to hurt Mike. He also told her that he had a gun behind the cot and was going to shoot her husband with it.

After reaching the cot, defendant forced Valerie to have intercourse with him and then he walked her back to the residence. When they approached they found that Mike had come home. Valerie cried out to her husband and ran to the residence. Mike had some words with defendant and then entered the residence to see if Valerie was all right. Defendant left and was arrested later that morning.

Defendant's defense was that Valerie Moore consented to both his entry into the residence and to sexual intercourse. His evidence, consisting primarily of his own testimony, tended to show that he and Valerie had consensual intercourse twice before the occasion in question. On this occasion, defendant said both his entry into the residence and the sexual intercourse were accomplished with Valerie's consent, but Mike caught them returning to the trailer. As he was leaving the trailer defendant heard Mike beating Valerie. He heard Valerie ask her husband to stop beating her because "he made me do it."

Mike was not called as a witness by either the state or the defendant.

I.

[1] By his first assignment of error defendant contends that the trial court erred in admitting into evidence the results of a polygraph examination administered to him for the reason that the stipulation authorizing the examination was not complied with. We agree with this contention.

The state and the defendant stipulated that defendant would submit to a polygraph examination and the results would be admitted into evidence provided a number of conditions were met. One of these conditions was that Valerie Moore would also "submit herself to a similar polygraph examination under the same terms, conditions and stipulations" governing the defendant's examination and that Valerie's results would also be admissible into evidence. The stipulation provided further: "The specific polygraph procedures to be used, both the scope and actual wording of the relevant test questions, the examination conditions, and

all other aspects of the examination shall be at the polygraphist's sole discretion."

Evidence as to the manner in which the polygraph examinations of Valerie and defendant were conducted came from the polygraphist, Albert Stout. Stout testified that he scheduled the examinations of Valerie and defendant for the morning of 21 October 1980. While both parties were waiting to take their examination, they encountered each other in Stout's offices. According to Stout, who observed the encounter, "Ms. Moore was quite visibly shaken; visibly I mean to almost startled." Stout then proceeded with Valerie's polygraph examination. The results, in Stout's opinion, were inconclusive; they were inconclusive, in his opinion, because of Valerie's recent encounter with defendant. Stout said, "I could not come up with a conclusion on Ms. Moore, because of the experience, what we call the anti-dampening climax situation where a stimuli is invoked that a person relives the same incident over again and they can't come down. I tried to calm Ms. Moore down, but to no avail." Stout then proceeded to conduct a polygraph examination of defendant. When asked about the possible effect of the encounter with Valerie Moore on defendant, Stout said, "The only thing I seen about Mr. Meadows is that he was very within himself, calm, and etc." Stout testified that in his opinion defendant's polygraph examination indicated "deception." Stout testified that he gave Valerie Moore a second polygraph examination on 4 November 1980. In his opinion the results of this examination indicated no "deception."

We are satisfied that by according Valerie Moore, but not defendant, a second opportunity to take the polygraph examination under the circumstances here presented, the polygraphist violated that provision of the stipulation which required that both defendant and Valerie Moore take "a similar polygraph examination under the same terms [and] conditions."

It is settled in this jurisdiction that evidence relating to polygraph examinations is not admissible unless the parties stipulate its admissibility and the trial court, in its discretion, determines to admit it. *State v. Milano*, 297 N.C. 485, 256 S.E. 2d 154 (1979); *State v. Brunson*, 287 N.C. 436, 215 S.E. 2d 94 (1975); *State v. Foye*, 254 N.C. 704, 120 S.E. 2d 169 (1961). The provisions

of the stipulation governing admissibility of this evidence must be strictly complied with. *Chambers v. State,* 146 Ga. App. 126, 245 S.E. 2d 467 (1978); *see State v. Milano, supra; Butler v. Florida,* 228 So. 2d 421 (Fla. Dist. Ct. App. 1969); *People v. Reagan,* 395 Mich. 306, 235 N.W. 2d 581 (1975). In *Milano* we held that polygraph results unfavorable to defendant but obtained pursuant to a stipulation of admissibility could be admitted against defendant, but defendant was not entitled to offer the favorable results of a psychological stress evaluation, a test also designed to indicate the presence or absence of deception, because the stipulation did not by its terms cover the latter test. 297 N.C. at 500, 256 S.E. 2d at 162-63.

Here Valerie Moore was given two opportunities to "pass" the polygraph; she succeeded on the second. Defendant was given only one. The only justification for this procedure is the polygraphist's opinion that a chance encounter between defendant and Valerie Moore immediately before both tests were conducted caused Valerie Moore not to "pass" her test but had no effect on defendant's failure to "pass" his.

This justification will not suffice. The stipulation required both parties to be given "similar" tests "under the same terms [and] conditions." Therefore if one party, for whatever reason, is given two completed tests which were reliably administered on a reliable machine, *i.e.,* two chances to "pass," the stipulation requires that the other party be given two tests at approximately the same time and place on the same machine by the same operator.

Here Valerie Moore's first examination was not aborted before it was completed, nor was it unreliable because of improper administration or a machine malfunction. Her first examination was completed and the results duly obtained. The polygraphist testified on voir dire that Valerie Moore's first examination "was a reliable examination, but . . . because of certain uncontrollable things that I was not able to overcome certain fears by [Valerie Moore]."

Neither does the first stipulation, giving the polygraphist sole discretion with regard to the manner in which the tests are to be conducted, override the stipulation that the tests be "similar" and be given under the "same terms [and] conditions."

The first stipulation refers only to the manner in which both tests must be given. It is subject to the stipulation that both tests be similar and conducted under the same terms and conditions. Construing the stipulations together, the agreement means that however the polygraphist decides to give the tests he must give similar tests to both parties and they must be given under the same terms and conditions.

The stipulation will remain in full force and effect and will govern the admissibility of whatever polygraph-related evidence is offered at the new trial. In order, however, that both Valerie Moore and defendant be given "a similar polygraph examination under the same terms [and] conditions," similar tests should be readministered to both parties at or about the same time and place by the same polygraphist on the same machine.

II.

[2] In his second assignment of error defendant contends that the trial court erred in its instructions to the jury with respect to the consideration they should give to the evidence relating to the polygraph examinations. We agree with this contention.

During the course of the polygraphist's direct examination he was asked if he had an opinion whether defendant showed deception in answering certain questions during the polygraphic examination. Defendant objected; the court overruled the objection and instructed the jury as follows:

> COURT: Again, members of the jury, there is evidence that the defendant voluntarily submitted to a lie detector or a polygraph test. This is not to be considered by you in any way as proving any element of any crime charged against the defendant. If it shows anything, which is for you to determine, along with all the other evidence in the case, it shows at most and may be considered by you at most in determining whether at the time the defendant took the test on October 21, 1980, he was telling or not telling the truth.

> [You may consider it along with all the other facts and circumstances in determining the defendant's guilt or innocence; because it is solely the province of the jury to determine the guilt or innocence, and even though you may consider the results of the polygraph test, what weight if any, should be

given to such tests or the result of such tests, is for you and you alone to say and to determine and you'll remember that at all times.]

Defendant correctly assigns as error the portion of the instruction enclosed in brackets. In *State v. Milano, supra,* 297 N.C. at 499, 256 S.E. 2d at 162, this Court said:

> The law is clear that even if the results of a polygraph examination are properly admitted at trial, that evidence cannot be used to show a defendant's guilt or innocence of the crime charged; it may only be used as evidence relating to a defendant's credibility.

While the first part of the instruction quoted above is correct, it is followed by an incorrect statement of the law. The jury did not know which instruction to follow. "It has been uniformly held that where the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted on the incorrect part." *State v. Parrish,* 275 N.C. 69, 76, 165 S.E. 2d 230, 235 (1969), *quoted with approval in State v. Harris,* 289 N.C. 275, 280, 221 S.E. 2d 343, 347 (1976).

### III.

[3] Defendant next contends the trial court erred in denying his motion to dismiss the burglary charge because all of the evidence shows that Mike Moore gave him permission to enter the trailer. He further argues that the trial court erred by failing to instruct the jury that it must find that defendant entered the trailer without the consent of both Valerie and Mike Moore in order to convict him of first degree burglary. We conclude there is no merit in these arguments in light of the evidence.

"The constituent elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein." *State v. Person,* 298 N.C. 765, 768, 259 S.E. 2d 867, 868 (1979). The breaking and entry of the dwelling must be without the consent of anyone authorized to give consent. *State v. Boone,* 297 N.C. 652, 256 S.E. 2d 683 (1979); *State v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751 (1943); *State v. Goffney,* 157 N.C. 624, 73 S.E. 162 (1911); *State v. Rowe,* 98 N.C. 629, 4 S.E. 506

(1887); *State v. Tolley,* 30 N.C. App. 213, 226 S.E. 2d 672, *disc. rev. denied,* 291 N.C. 178, 229 S.E. 2d 691 (1976); Annot., *Burglary—Entry with Consent,* 93 A.L.R. 2d 531 (1964). Defendant argues that the state's evidence shows that Mike Moore gave defendant permission to enter the trailer on the occasion in question and that Mike Moore, being an occupant of the trailer (there is no evidence that Mike Moore was an owner of the trailer), was authorized to consent to defendant's entry. The state contends that since actual occupancy of the dwelling is a necessary element of first degree burglary only the actual occupant at the time of entry has authority to consent to the entry; therefore even if Mike Moore did consent on the occasion in question, it is unavailing to defendant. In light of the evidence in the case we do not reach the question posed by the parties.

Defendant testified in his own behalf. He never testified that Mike Moore had given him permission to enter the Moore trailer on the occasion in question. Defendant testified simply that Valerie Moore willingly permitted him to enter the trailer and, thereafter, consented to sexual intercourse. Defendant testified that he and Mike were "mostly drinking friends" and that he had "been to the Moore residence with Mike Moore a lot." He also testified that he had been to the Moore residence at times when Mike was not there, had been let into the residence by Valerie Moore and had had consensual sexual relations with her on these other occasions.

Defendant's testimony, far from demonstrating defendant's reliance on Mike Moore's permission to enter the residence, affirmatively negates such reliance. According to defendant, he and Valerie Moore had met at the residence clandestinely without Mike Moore's knowledge before the occasion in question. The incident being tried was just another in a series of similar rendezvous. Indeed when Mike Moore returned and caught defendant and Valerie Moore together, defendant testified:

> Mike ran up to me and said, 'I finally caught you, you son-of-a-bitch, I know you been messing with my wife.' He swung at his wife and she ran into the house and then he walked up to me and said, 'Man, why do you want to do me like this?' He walked up on me again and I told him to get off me and I put my hand out and said, 'Get off.' And he ran into the house and he started fighting with his wife.

The only defense to the burglary charge supported by defendant's testimony is that Valerie Moore consented to his entering the trailer.

Valerie Moore denied that she consented to defendant's entry. Testifying for the state, she said that on the night in question she had locked the front door and was in her darkened bedroom when she heard someone call her name. She "turned over and I saw someone standing there with a cigarette in their hand, I saw the light of the cigarette. He [the defendant] said, 'Mike told me I could come down here.' I was just waking up at this time, trying to get myself set on what he was saying. He said that Mike showed him how he could get in the house. He said that Mike told him to come and wait for him. I said, 'Well, what do you mean? I don't care if Mike did tell you to come down here. I don't appreciate you coming in my house at this time of night, regardless of what Mike said. If Mike told you, I don't appreciate Mike telling you because that's not showing me any respect at all.' And he said, 'Well, he told me to come down here and wait on him.' "

In light of the theory of defendant's defense as revealed by his own testimony, it is clear that Valerie Moore's testimony is not evidence tending to prove that Mike Moore had given defendant permission to enter the trailer. It tends to prove only that defendant *said* to Valerie Moore that Mike Moore had given him permission to enter the Moore residence. If believed, it tends to prove the ruse by which defendant tried to assuage her fears.

The issue joined at trial in the burglary case, therefore, was whether Valerie Moore, not Mike Moore, consented to defendant's entry. The trial court properly instructed the jury on this issue, saying that the jury would have to find, among other things, beyond a reasonable doubt, that defendant entered into the Moore residence when it was occupied by Valerie Moore "without her consent" in order to convict defendant of first degree burglary.

"The theory upon which a case is tried in the lower court must prevail in considering the appeal and interpreting the record and determining the validity of the exceptions." *State v. Honeycutt,* 237 N.C. 595, 599, 75 S.E. 2d 525, 527 (1953). A defendant is not permitted to defend at trial upon one theory "and, upon an adverse verdict, call upon the appellate court to grant relief on

the ground that the presiding judge should have intervened and guided his defense to another theory . . . ." *State v. Blackwell,* 276 N.C. 714, 720, 174 S.E. 2d 534, 538, *cert. denied,* 400 U.S. 946 (1970).

For the reasons stated, defendant is given a

New trial.

Justices MITCHELL and MARTIN did not participate in the consideration and decision of this case.