STATE OF NORTH CAROLINA v. JIMMY EARL HARRIS

No. 176A85

(Filed 18 February 1986)

1. **Criminal Law § 99.3— confession photocopied—copies given to jurors—no expression of opinion by court**

   The trial court did not err in allowing copies of an accomplice's statement implicating defendant to be photocopied and distributed to each juror since the trial judge did not thereby express an opinion on the credibility of the witness; defendant did not object to the procedure at trial and did not request any instruction on the matter; and the manner of the presentation of evidence is a matter resting primarily within the discretion of the trial judge.

2. **Homicide § 25.1— erroneous instruction—subsequent instruction on acting in concert proper—no prejudice**

   Defendant in a first degree murder case was not prejudiced by the trial court's erroneous instructions with respect to the role played by defendant in the crime since the court subsequently correctly instructed on acting in concert; the earlier erroneous instruction was in fact favorable to defendant; and defendant did not object to the challenged instructions.

3. **Criminal Law § 101.2— jurors reading of newspaper article—duty of court to admonish jurors—curative instruction**

   Though the trial court erred in failing to admonish jurors to avoid contact with any accounts of the trial outside the courtroom pursuant to N.C.G.S. 15A-1236(a)(4), and several jurors did read a newspaper article covering the *voir dire* hearing on the admissibility of defendant's confession, defendant was not prejudiced since he did not object to the court's failure properly to instruct the jury and did not ask for complete instructions; the contents of the article were not injurious to defendant's case, as most of the matters discussed in the article were presented to the jury during the trial and the statements the article attributed to defendant were the same contentions his attorney made at trial; and the district attorney's reported comment about the case potentially being dropped in the event defendant's statement was suppressed in no way

conveyed an opinion as to defendant's guilt or innocence. Furthermore, even if the article was prejudicial to defendant, the trial judge's instructions to the jury cured any possible prejudice, and the jurors indicated that they could put the article out of their minds and that they could remain impartial and limit their deliberations to matters adduced at trial.

**4. Criminal Law §§ 62, 76.4— polygraph test—admissibility at confession—voir dire hearing**

Evidence concerning the administration of a polygraph test may be admissible in the absence of the jury on a *voir dire* hearing to determine the admissibility of a confession.

**5. Criminal Law § 75.3— voluntariness of confession after polygraph test**

The trial judge properly found that defendant's confession was made freely, voluntarily and understandingly where defendant confessed after a polygraph operator told defendant he did not believe defendant was telling the truth on the test; defendant was fully advised of his constitutional rights each time officers spoke with him; on each occasion defendant waived his rights and agreed to talk with the officers; no threats, promises, inducements, or offers of reward were made to defendant; there was no show of violence or threats of violence to induce defendant to talk with officers; there was nothing coercive in transporting defendant from one jail to another in order to prevent his coming into contact with his codefendant; and while in custody defendant placed a call to his aunt in a nearby town in order to verify his alibi, and there was no evidence that he was not free to make other calls if he so desired.

APPEAL by defendant from judgment entered by *Brown, J.*, at the 12 November 1984 session of Superior Court, NASH County. Heard in the Supreme Court 16 December 1985.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the state.*

*Thomas W. King, for defendant.*

MARTIN, Justice.

The evidence tended to show that Rodney Moore and Jimmy Harris, the defendant, broke into a house on Western Avenue in Rocky Mount in June 1984 and stole a .45-caliber automatic handgun. Between midnight and 1:00 a.m. on 8 July 1984, while Moore and Harris were out riding around together in defendant's father's car, they passed by Rocky Mount Motor Court. Seeing the door open to the end room, the two men planned to rob the people inside, thinking the open door would make the robbery easy. They parked in a nearby trailer park and walked to the motel.

The occupants of room 40, Jackie McCluster and Katherine Harrell, were preparing to move into another room at the motel because the air conditioning in room 40 was not working. Mr. McCluster was packing his belongings and Ms. Harrell was sitting on the bed talking to him. Suddenly, Moore, with the gun in his hand, entered the room and closed the door behind him. He told the room's occupants to hold it and to be quiet. When McCluster began to ask Moore what he wanted and moved towards him, Moore pulled the trigger and shot McCluster in the chest. Ms. Harrell began screaming and picked up the telephone receiver. Moore told her to put it down, which she did, and when the telephone rang back and she picked it up, he walked out of the room, pointing the gun at her.

A police officer arrived, went into the motel room, and came back out, saying that McCluster was dead. Ms. Harrell identified Moore as the man who shot McCluster. She did not ever see or hear anyone else with him. Autopsy revealed that McCluster died as a result of a gunshot wound to the chest.

Rodney Moore was arrested on 2 August 1984 and on 3 August gave police written confessions to both the June breaking and entering and larceny on Western Avenue and to the murder and attempted robbery of McCluster. He implicated defendant in both incidents. Specifically, he said that defendant waited at the corner of the Rocky Mount Motor Court, outside room 40, while Moore went inside; that defendant had heard the shot; and that defendant "got sort of mad" when he found out Moore had not gotten anything from the victims.

On 3 August 1984, Rocky Mount police officers Thompson and Howard arrested Harris. Defendant denied any involvement in the crimes.

Evidence at the suppression hearing showed that Rocky Mount Police Lieutenant Johnny Edwards interviewed defendant on 5 August as a suspect in the shooting death of McCluster. Defendant waived his Miranda rights, signed a polygraph release form, and agreed to take a polygraph test. During the pretest interview, defendant consistently denied any participation in the 8 July incident. After defendant had taken the polygraph examination and Lt. Edwards had reviewed the results, the police officer told defendant that he didn't think defendant was telling the

truth. At that point, defendant admitted that he had been with Moore at the motel on 8 July, that the two men planned to rob the people in the room with the open door, that Moore went into the room while he waited outside, and that he did not know that Moore was going to shoot the man. Lt. Edwards then asked defendant if he would give him a written statement, and defendant said he'd prefer for the lieutenant to ask the questions and he would answer and sign them. Lt. Edwards asked defendant questions about the incident and wrote down the questions and defendant's answers to them, and then defendant initialed each question and signed the statement at the bottom. Again, defendant admitted being with Moore at the motel on the night of the killing but denied breaking into the house on Western Avenue and helping to steal the .45 pistol. Harris then agreed to go with Edwards and other detectives to the motel the next morning to show them where he stood and what Moore did.

Further, at around 8:45 a.m. the next morning, defendant was brought into Edwards' office. SBI Agent Terry Newell and Captain Horace Winstead and Detective Wayne Sears of the Rocky Mount Police Department were also present. Detective Sears read defendant's statement indicating defendant's involvement in the murder, and Harris confirmed his answers from the previous day one by one and admitted signing the confession. Agent Newell also glanced at the statement and observed defendant's signature at the bottom. The confession was put back on Lt. Edwards' desk. Defendant was then left alone in Lt. Edwards' office for approximately ten minutes. When the officers returned to the room, they asked defendant if he was ready to go with them to the motel. When they arrived at the motel, defendant became uncooperative and denied ever having gone to that motel, saying that the motel he went to with Moore was somewhere else. The officers took defendant back to the police station. After Detective Sears and Lt. Edwards realized that defendant's confession was missing from the lieutenant's desk, defendant began disrobing, saying "You think I got it? Check me." Defendant was returned to his cell, and the two officers "took [the] office apart" looking for the statement, but it was never found.

Defendant testified at the suppression hearing and denied answering "yes" to Edwards' questions concerning defendant's participation in the murder and also denied initialing or signing a

confession. He did, however, admit picking up the statement from Lt. Edwards' desk while he was left alone in the room and putting it in his shirt pocket and throwing it out of the car window on the way back to the police station from the scene of the burglary of the gun. Defendant testified that he had visited his father in Spring Hope, North Carolina, from the 7th to the 8th of July and that he knew nothing about the murder.

The trial judge overruled defendant's motion to suppress, finding that none of defendant's constitutional rights had been violated; that his statements were made freely, voluntarily, and understandingly; that defendant was given no promises or inducements; that there were no threats of violence; that defendant had fully understood his constitutional rights to silence and counsel and other rights; and that defendant freely, knowingly, voluntarily, and intelligently waived each right.

Defendant did not take the stand but presented alibi evidence from his father, Forest Harris, which was corroborated by Beulah Mitchell, defendant's paternal grandmother who resides with her son. Rodney Moore also testified for the defense. He admitted to having agreed with the state that he would enter a guilty plea in these cases. Moore testified that he went alone to the Rocky Mount Motor Court and that only he was present with Mr. McCluster and Ms. Harrell when the shooting, which he said was accidental, occurred. He said that the police had promised to help him if he implicated defendant in the killing, so he told them "a bunch of stuff." He further admitted that when he was first arrested, he gave a written confession to police which he assured them was the truth and that in it he confessed that both he and Harris had stolen the gun used to kill McCluster; that Harris was with him when he shot the victim and that Harris had heard the shot. On the stand, he confirmed he had told officers:

> Me and Jimmy Harris was going north on Church Street in his father's car. We were going to the Squirrel's Nest Club in Goldrock and I had an automatic gun with me I had stole from Western Avenue and we went to the Motor Court. The end room door was opened and we saw it. Jimmy said that it might be some money in there, so we said let's go check it out. We turned around at the bowling alley and parked. Then we went back in the room and he stood at the ed — edge of the room and I went in. That's what happened.

However, at defendant's trial, Moore also denied that he had initially told officers the truth.

The jury returned verdicts of guilty of murder in the first degree and guilty of attempted robbery with a firearm. Apparently applying the doctrine of *Enmund v. Florida,* 458 U.S. 782, 73 L.Ed. 2d 1140 (1982), the trial judge sentenced defendant to life imprisonment for the crime of murder in the first degree, and ruled that the attempted armed robbery conviction merged with the murder conviction. From this judgment, defendant entered notice of appeal.

## I.

[1] Defendant first argues that the trial court erred in allowing copies of Rodney Moore's statement to be photocopied and distributed to each juror. He contends that this "gave improper weight to said statements and thus was an improper commentary on the evidence" on the part of the trial judge.

During cross-examination, the district attorney sought to impeach the allegation made by Moore on direct examination that he acted alone in the commission of the crimes by introducing into evidence several statements initially made by Moore to police to the effect that defendant had been with him at the time of the perpetration of the crimes. State's exhibits 8 and 12 were rights forms and waivers executed by Moore, and state's exhibits 9, 10, and 11 were handwritten confessions of Moore. After the prosecutor moved that these five exhibits be received into evidence, the trial judge said, "All right, I will let you make copies during the lunch recess, I would like to give each member of the jury a copy." After the lunch recess, the exhibits were distributed to the individual jurors. Defendant asserts that this action by the trial judge violated N.C.G.S. § 15A-1222, which states that "[t]he judge may not express during any stage of the trial any opinion in the presence of the jury on any question of fact to be decided by the jury," and the rule set out in *State v. Simpson,* 233 N.C. 438, 64 S.E. 2d 568 (1951), in which it was held that N.C.G.S. § 1-180 (the predecessor to 15A-1222) "forbids any intimation of [the trial judge's] opinion in any form whatever, it being the intent of the law to insure to each and every litigant a fair and impartial trial before the jury." 233 N.C. at 442, 64 S.E. 2d at 571. Defendant asserts that the judge's statement and ac-

tion clearly indicated his opinion "as to the lack of credibility of the witness, Rodney Moore, given the prior inconsistent statements made by him as to the role of the Defendant-Appellant," and that defendant was thereby prejudiced.

The transcript reveals that defendant did not object at trial either to the judge's remark or to the procedure and did not request any instruction on the matter. Because the manner of the presentation of evidence is a matter resting primarily within the discretion of the trial judge, his control of the case will not be disturbed absent a manifest abuse of discretion. *State v. McCray*, 312 N.C. 519, 324 S.E. 2d 606 (1985); *State v. Goldman*, 311 N.C. 338, 317 S.E. 2d 361 (1984); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983); *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308 (1983). The fact that the trial judge chose to have copies of these handwritten statements made for distribution to individual jurors instead of providing one copy to the twelve jurors and waiting for each one to read the statements and pass them along was well within his discretion, and the record does not support a finding that defendant was prejudiced by the manner in which the judge chose to publish these exhibits to the jury. Accordingly, this assignment of error is overruled.

II.

[2] Defendant secondly contends that the trial court committed prejudicial error in its charge to the jury on the elements of the offenses. Specifically, defendant claims that the trial judge failed to make proper reference to the role played by the defendant as indicated by the evidence and that the trial judge later issued further confusing instructions with respect to the role of the defendant.

Defendant contends that the trial judge erred when he instructed the jury initially that in order to find defendant guilty of murder in the first degree, the jury must find that defendant had a firearm in his possession which he used to threaten or endanger the life of McCluster or Harrell pursuant to his design to bring about the robbery, that defendant shot McCluster, and that the shooting was the proximate cause of McCluster's death. Similarly, the trial judge instructed that to find defendant guilty of attempted armed robbery, the jury must find that defendant possessed a firearm, that he threatened to use the firearm to en-

danger or threaten the life of the victims, and that defendant's use of the firearm was designed and calculated to bring about the robbery. In so charging, the judge created the mistaken impression that to convict defendant of murder, defendant himself must have actually done the shooting, and to convict defendant of attempted armed robbery, defendant had to have been holding the gun. Neither counsel for defendant nor for the state objected to these erroneous instructions. Following these instructions, the jury retired and deliberated from 3:00 to 4:58 p.m.

The next morning, Judge Brown expressed to the jurors some concern about the clarity of his previous instructions and told them that he was going to give them "some further instructions." He then correctly instructed them as to the elements of the crimes under a theory of acting in concert, saying that in order to convict a defendant of a crime it is not necessary that he personally commit all the acts required to constitute that crime and that when "two or more persons act together with the common purpose to commit robbery and while attempting to commit the robbery a murder occurs, each is held responsible for the acts of the other done in the commission of the attempted robbery or the murder." The trial judge then proceeded to summarize the evidence and instruct according to the evidence adduced at trial, namely that Rodney Moore possessed the gun and was the actual perpetrator of the killing and that to convict defendant, the state must prove that defendant acted with Moore with the intent to rob McCluster or Harrell.

Defendant did not object to the challenged instructions as required under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure and now contends that the charge constituted "plain error" under *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

Defendant cites *State v. Harris*, 289 N.C. 275, 280, 221 S.E. 2d 343, 347 (1976), to support his claim that "where the Court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part. . . . It must be assumed on appeal that the jury was influenced by that portion of the charge which is incorrect," and thus defendant is entitled to a new trial.

We find the facts of *Harris* to be distinguishable. In that case, the judge's instruction placing the burden on the defendant of satisfying the jury that the victim's death was an accident was held to have been error because accident is not an affirmative defense. The Court in that case found that "an erroneous instruction *on the burden of proof* is not ordinarily corrected by subsequent correct instructions upon the point." 289 N.C. at 280, 221 S.E. 2d at 347 (emphasis added). Such is not the situation here.

As we pointed out in *Odom,* the plain error rule will be applied only in exceptional circumstances where the error was sufficiently fundamental and prejudicial as to amount to a miscarriage of justice or the denial of a fair trial, "or where it can fairly be said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'" 307 N.C. at 660, 300 S.E. 2d at 378 (quoting *United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir. 1982)). In the case sub judice, it cannot be said that the trial judge's initial mistaken instruction was prejudicial to defendant. As the state correctly points out in its brief, the instruction was in fact favorable to defendant. We therefore decline to apply the plain error rule and we overrule this assignment of error.

### III.

[3] In his third and fifth assignments of error, defendant alleges prejudicial error in the trial court's failure to instruct jurors to avoid listening to or reading media coverage of the trial and contends the trial court erroneously denied defendant's motion for mistrial when it was discovered that several jurors had read a newspaper article on the trial.

N.C.G.S. § 15A-1236 provides, in pertinent part:

(a) The judge at appropriate times must admonish the jurors that it is their duty:

. . . .

(4) To avoid reading, watching, or listening to accounts of the trial;

Our review of the transcript confirms defendant's allegation that at no time during the trial did Judge Brown instruct the jury in accordance with 15A-1236(a)(4). Defendant argues that the trial

judge's omission in this regard constituted prejudicial error because several jurors read a newspaper article covering the voir dire hearing the previous day on the admissibility of defendant's confession. Prejudice resulted, he alleges, because testimony of the defendant appeared in the article although defendant never took the stand during trial in the presence of the jury. Furthermore, the article reported that "[i]f Judge Brown rules that the evidence be suppressed, [the assistant district attorney] said, the case may be dropped." Defendant was thereby prejudiced, he contends, in that the jurors who read the article certainly must have thought the trial judge considered defendant's confession significant and that there was "something to the statement" when he declined to suppress it.

Defendant also claims the trial court abused its discretion in the denial of his motion for mistrial when the several jurors admitted they had read the newspaper article. Defendant alleges prejudice in this matter since the trial judge had not adequately warned the jury to avoid such media coverage and he thereby "enhanced the statements"; the article indicated the case might be dismissed if defendant's statements were suppressed; matters not in evidence before the jury appeared in the article; and the voir dire testimony of defendant, who didn't testify at trial, was reported in the article, violating defendant's fifth amendment right against self-incrimination. He says that in *State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967), involving an article similar to that sub judice, defendant's motion for a mistrial was held properly denied because the trial judge there had admonished the jury about avoiding trial publicity and the jury was also sequestered, but neither of those conditions was met in the case before us. Defendant also cites *State v. Reid*, 53 N.C. App. 130, 280 S.E. 2d 46 (1981), as analogous to this case. In *Reid*, the trial judge was quoted in the newspaper as having said there were "too many shots" and that thus the defendant's motion to dismiss for insufficiency of evidence would be denied; this was found to have been prejudicial error. Here, defendant says, a critical issue was whether defendant Harris's statement would be suppressed, and he maintains that the state's evidence was enhanced by the district attorney's out-of-court statement. As jurors were not free from outside influences, defendant's right to a fair trial was threatened in violation of *Sheppard v. Maxwell*, 384 U.S. 333, 16 L.Ed. 2d 600 (1966).

State v. Harris

We agree with defendant that N.C.G.S. § 15A-1236(a)(4) requires the trial judge to admonish jurors to avoid contact with any accounts of the trial outside the courtroom and that the trial judge's failure to do so in this case was error. However, defendant must show prejudice, *State v. Williams*, 296 N.C. 693, 696, 252 S.E. 2d 739, 742 (1979), and furthermore, he must object to any failure to properly instruct the jury. *State v. Richardson*, 59 N.C. App. 558, 297 S.E. 2d 921 (1982); *State v. Daniels*, 59 N.C. App. 442, 297 S.E. 2d 150 (1982). Not only did defendant's counsel fail to object and to ask for complete instructions, but also for the reasons stated below, we fail to find either that this error was prejudicial or that the trial judge abused his discretion in denying defendant's motion for a mistrial on account of the newspaper article in question.

The article complained of by defendant merely stated that defendant had pled innocent to the charges against him; listed the offenses charged; reported that defendant was being tried on an "acting in concert" theory; reported that defendant had confessed to driving the car to the motor court; told that defendant had admitted taking the confession from Edwards' desk and throwing it away; said that Harrell had testified; and reported that to which defendant objects, namely that the prosecutor commented that "the case may be dropped" if Judge Brown ruled the confession inadmissible. We agree with the state that the contents of the article were not injurious to defendant's case, as most of the matters discussed in the article were presented to the jury during the trial and the statements the article attributed to defendant were the same contentions his attorney made at trial. We also agree with the state that the district attorney's comment about the case potentially being dropped in the event defendant's statement was suppressed in no way conveyed an opinion as to the defendant's guilt or innocence. The district attorney's comment at most could be construed to be a commentary on the insufficiency of the evidence against defendant without the statement.

Not only do we find the contents of the article not to have been prejudicial, but our review of the record reveals the following transpired before the judge gave his corrected instructions:

COURT: Ladies and gentlemen, I have been handed a copy of the Evening Telegram which has a report of this case

in Wednesday's addition [sic] and I ask if any of you have read that article?[1] Now there were matters reported in that article that might not have been in evidence at this trial. I will ask those of you who have read the article if you feel that you will be able to disregard what was reported in that article and not consider it in your deliberations and make up your verdict solely on the evidence that was presented and that you heard in the courtroom. If any of you feel that you could not do that, then you need to let me know. I take it then that all of you feel that that would not in any way have any bearing on your verdict in the case, is that correct? If that is your feeling, please raise your hand and let me know.

(All jurors raised hands.)

Although we do not find the article in question to have damaged defendant's case in any way, even assuming arguendo that the remarks in question were prejudicial, the trial judge's instructions cured any possible prejudice. The jurors affirmatively indicated that they could put the article out of their minds and that they could remain impartial and limit their deliberations to matters adduced at trial. As the Supreme Court of the United States stated in *Irvin v. Dowd*, 366 U.S. 717, 723, 6 L.Ed. 2d 751, 756 (1961), on the subject of pretrial publicity:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Along these lines, as (then) Judge Mitchell wrote in *State v. McDougald*, 38 N.C. App. 244, 251, 248 S.E. 2d 72, 79 (1978):

> A defendant has not borne his burden of showing that he will be denied an impartial jury solely by introducing evidence that his case has received widespread news coverage or that some prospective jurors have been exposed to such coverage

---

1. According to defendant in his brief, at this point at least three and possibly four jurors raised their hands in response to the court's inquiry.

and formed or expressed opinions based upon their exposure. The defendant must additionally show that it is reasonably likely that prospective jurors would base their conclusions in his case upon pretrial information rather than evidence introduced at trial and would be unable to put from their minds any previous impressions they may have formed.

The same principles espoused in *Irvin* and *McDougald* apply no less to cases where the jurors were exposed to the offending publicity during the course of the trial. As defendant has failed to make any persuasive showing of prejudice in the trial judge's failure to properly admonish the jury according to N.C.G.S. § 15A-1236(a)(4) and has failed to show any abuse of discretion in the trial judge's denial of his motion for mistrial, and as we do not perceive that either the failure to so admonish or the jurors' having read the article affected the jury's finding of guilt, we overrule this assignment of error.

IV.

[4] Defendant claims that the trial court committed error in allowing into evidence at the voir dire hearing on defendant's motion to suppress his statement evidence associated with a polygraph examination of defendant and evidence obtained after use of the polygraph test. He asserts that the mention of the polygraph test at trial was admitted in violation of *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983), in which we imposed a ban on polygraph evidence at trial,[2] and *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E. 2d 740 (1983), in which we reiterated our holding in *Grier* that polygraph results are incompetent for all purposes at trial. It was clearly improper, defendant alleges, for a police officer to testify on voir dire that he gave defendant a polygraph test and that after the test he concluded that defendant was not telling the truth.

The test for determining the voluntariness of a confession is whether the confession is voluntary under the totality of the circumstances of the case. *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983). In the case presently before us, the trial court con-

---

2. In its opinion, the Court made clear that its ban on the use of polygraph evidence at trial in no way served to prohibit the use of polygraph examinations for investigative purposes. 307 N.C. at 645, 300 S.E. 2d at 361.

ducted a voir dire hearing on defendant's motion to suppress the statement made by defendant. During this hearing, the state presented evidence showing that defendant volunteered to take a polygraph test during the police investigation into the murder, that he took the test, that the examiner told defendant he did not think that defendant was telling the truth, and that defendant thereupon confessed. The administration of the polygraph test was merely an event bearing on the total circumstances surrounding defendant's inculpatory statement. At no time during the suppression hearing were the substantive questions and answers of the polygraph test discussed, nor were the results of the test ever admitted as substantive evidence to show whether the defendant's statements were true, and it was made clear in *Grier* and *Craig and Anthony* that the *results* of the polygraph examination are the evil to be avoided. *See generally* Annot. "Property and Prejudicial Effect of Informing Jury that Accused Has Taken Polygraph Test Where Results Would Be Inadmissible in Evidence," 88 A.L.R. 3d 227 (1978 & Supp. 1985). We hold that evidence concerning the administration of a polygraph test may be admissible in the absence of the jury on a voir dire hearing to determine the admissibility of a confession. We find this assignment of error to be without merit.

## V.

[5] Finally, defendant contends that the trial court abused its discretion in denying defendant's motion to suppress his statement to police officers. He asserts that his confession was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966). In arguing that his statement was inadmissible and involuntary, he asserts first that the trial judge's reliance on and acceptance of testimony concerning the polygraph examination in deciding the motion to suppress defendant's statement was error under *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351; second, he alleges that his confession was induced by improper and coercive law enforcement tactics and procedures such as repeated questioning during a three-day period and his being transported between the Rocky Mount Police Department and the Edgecombe County Jail; and third, that interrogating officers did not permit defendant to contact family, friends, or an attorney during the forty-eight hours prior to the confession.

As we said in the previous discussion, it was not error for the trial judge to admit testimony on voir dire that defendant confessed after the polygraph operator told him he did not believe defendant was telling the truth on the test, as this related to the totality of the circumstances surrounding defendant's confession. The fact that a polygraph test was administered is a question which bears on the admissibility of the confession, and the admission of testimony concerning the polygraph test is not in itself an adequate basis for ruling a confession involuntary. *See generally* Annot. "Admissibility in Evidence of Confession Made by Accused in Anticipation of, During, or Following Polygraph Examination," 89 A.L.R. 3d 230 (1979 & Supp. 1985); Annot. "Admissibility of Polygraph Evidence at Trial on Issue of Voluntariness of Confession Made by Accused." 92 A.L.R. 3d 1317 (1979 & Supp. 1985).

Regarding defendant's second argument, we do not find that any of the actions of the police were improper. Defendant was advised of his rights and was questioned only briefly on the Friday he was arrested because he smelled of alcohol and was believed by police to be intoxicated. On Saturday afternoon, at about 2:00 p.m., defendant was again given his Miranda rights, signed a rights waiver form, and was interviewed for less than an hour. He was then taken to the magistrate's office and charged with murder in the first degree. Defendant agreed to take the polygraph test on Sunday night and signed a Miranda waiver form and a polygraph release form. The entire procedure, including the examination itself, the post-test interview, and the interview during which he made his incriminating statement took a total of about two hours, from about 7:30 p.m. to 9:30 p.m. On Monday morning at approximately 8:45 a.m., defendant was brought into Lt. Edwards' office where he was again given the Miranda warnings, and he confirmed the truth of the confession he had made to Lt. Edwards the night before. Defendant then accompanied officers to the Rocky Mount Motor Court, where he declined to cooperate. On the basis of our review of the record and transcript in this case, we agree with the trial judge that defendant was fully advised of his constitutional rights each time officers spoke with him; on each occasion defendant waived his rights and agreed to talk with the officers; no threats, promises,

inducements, or offers of reward were made to defendant; there was no show of violence or threats of violence to induce defendant to talk with officers. Further, we find nothing unreasonable or coercive in transporting defendant from Rocky Mount to the jail in Tarboro in order to prevent him from coming into contact with his codefendant, Rodney Moore, who was incarcerated in the jail at Rocky Mount. Finally, the record reveals that while in custody, defendant placed a telephone call to his aunt in Spring Hope in order to verify his alibi, and there is no evidence that defendant was not free to make other calls if he so desired. We hold that the trial judge properly found that defendant's confession was made freely, voluntarily, and understandingly.

We find that defendant received a fair trial free of prejudicial error.

No error.