STATE OF NORTH CAROLINA v. TIMOTHY CURTIS BARLOWE

No. 420A92

(Filed 29 July 1994)

**1. Burglary and Unlawful Breakings § 164 (NCI4th)— first-degree burglary—intent to commit murder—conflicting evidence—necessity for instruction on misdemeanor breaking or entering**

In a prosecution for first-degree burglary wherein the State presented evidence that defendant intended to murder the victim, his mother-in-law, at the time he broke and entered her home while looking for his wife and son, defendant presented sufficient evidence that the killing of the victim was accidental and that he did not possess the requisite intent to murder at the time he entered her home so that the trial court erred by refusing to instruct the jury on misdemeanor breaking or entering where

STATE v. BARLOWE

[337 N.C. 371 (1994)]

defendant's evidence tended to show that he loved the victim, who was like a second mother to him; he did not intend to injure anyone when he went to the victim's residence; his rifle occasionally discharged accidentally; he had activated the safety; the gun accidentally discharged when his father-in-law grabbed for the barrel; and he told a witness moments after the shooting that his father-in-law jerked the gun and it went off. This error was not cured by the guilty verdict of first-degree burglary since it cannot be known whether the jury would have convicted defendant of misdemeanor breaking or entering had it been properly instructed.

Am Jur 2d, Trial §§ 1427-1435.

Lesser-related state offense instructions: modern status. 50 ALR4th 1081.

2. **Assault and Battery § 116 (NCI4th)— assault with deadly weapon with intent to kill—instruction on misdemeanor assault not required**

In a prosecution of defendant for assault of his wife with a deadly weapon with intent to kill, defendant's testimony that he was unaware that his wife was in the car at the time he shot into the vehicle did not require the trial court to instruct on the lesser included offense of misdemeanor assault with a deadly weapon where defendant's intent to kill was shown by uncontradicted evidence that defendant and his wife had argued; defendant was angry, was breaking dishes, and said that he would get his gun; defendant heard his wife tell his son to get into the car; the vehicle was moving when defendant fired at it with his rifle, hitting the front windshield slightly to the right of center on the passenger side; and defendant, with another rifle in his hand, then searched for his wife. Assuming that defendant's testimony was sufficient to permit submission of the lesser offense, defendant was not prejudiced by the trial court's failure to submit the lesser offense where defendant's testimony was rejected by the jury when it found defendant guilty of discharging a firearm into an occupied vehicle.

Am Jur 2d, Trial §§ 1427 et seq.

3. **Homicide § 727 (NCI4th)— felony murder—two underlying felonies—arrest of judgment on one felony**

Where the jury found defendant guilty of felony murder based on the underlying felonies of first-degree burglary and discharg-

ing a firearm into occupied property, and there was error in submission of first-degree burglary requiring a new trial on that charge, the judgment imposed on the discharging a firearm into occupied property conviction must be arrested. To the extent that dicta in *State v. Pakulski*, 326 N.C. 434, 437, suggests that convictions for more than one underlying felony merge with the murder conviction, thereby mandating that judgment on the multiple underlying felonies be arrested, that dicta is expressly disavowed.

**Am Jur 2d, Homicide §§ 549 et seq.**

4. **Homicide § 658 (NCI4th)— voluntary intoxication— instruction not required by evidence**

The trial court did not err by refusing to instruct the jury on voluntary intoxication in a felony murder prosecution based on the underlying felony of first-degree burglary with the intent to commit murder where the evidence tended to show that defendant consumed alcoholic beverages during the day and evening of the crimes and that defendant was somewhat intoxicated, but nothing in the record indicated that defendant's mind and reason were so completely overwhelmed by alcohol that he was rendered incapable of forming the requisite intent to kill, and defendant testified that he knew what he was doing on the day of the crimes.

**Am Jur 2d, Homicide § 517.**

5. **Evidence and Witnesses § 1652 (NCI4th)— photographs— defendant's destruction of property—hostility toward wife—admission for illustrative purposes**

Five photographs depicting defendant's extensive destruction of the contents of the home he shared with his wife were properly admitted to illustrate the testimony of three witnesses that on the night of a murder and other crimes defendant acted overtly hostile and with inexplicable violence toward his wife, notwithstanding defendant admitted destroying most of the property shown in the photographs, where the photographs were not used excessively or repetitively during the trial, and the probative value of the photographs was not outweighed by the potential prejudice to defendant.

**Am Jur 2d, Evidence §§ 960 et seq.**

STATE v. BARLOWE

[337 N.C. 371 (1994)]

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Guice, J., at the 11 May 1992 Criminal Session of Superior Court, Caldwell County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments entered for first-degree burglary, assault with a deadly weapon with intent to kill, discharging a firearm into occupied property, and discharging a firearm into an occupied vehicle was allowed 23 March 1993. Heard in the Supreme Court 14 October 1993.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Herbert H. Pearce and Lucy R. McCarl for defendant-appellant.*

PARKER, Justice.

Defendant was indicted on 22 January 1991 for the murder of Mavel Jenkins Hawkins, assault with a deadly weapon with intent to kill Catherine Barlowe, and discharging a firearm into an occupied vehicle. He was further indicted on 17 February 1992 for first-degree burglary, discharging a firearm into occupied property, and injury to personal property. Defendant pled guilty to injury to personal property and was convicted by a Caldwell County jury on 20 May 1992 of first-degree burglary, assault with a deadly weapon with intent to kill, discharging a firearm into occupied property, discharging a firearm into an occupied vehicle, and first-degree murder based on felony murder with the underlying felonies being burglary and discharging a firearm into occupied property. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial judge imposed a sentence of life imprisonment for the first-degree murder conviction. Judge Guice also imposed a consecutive sentence of life imprisonment for the first-degree burglary conviction and three consecutive sentences of ten years' imprisonment for the assault and the two discharging a firearm convictions.

According to testimony introduced by the State, defendant had been drinking on the afternoon of 21 December 1990 with his cousin, Wayne Maltba, and two of defendant's employees, Michael Frye and Rodney Whisnant. When he returned home around 4:00 p.m., his wife, Catherine Hawkins Barlowe, confronted him about his drinking; and they argued for approximately thirty minutes. During the argument, defendant indicated he believed his wife intended to leave him. The argument ended when Catherine answered the telephone and defend-

STATE v. BARLOWE

[337 N.C. 371 (1994)]

ant went back out to the shed to continue drinking with Maltba, Frye, Whisnant, and Chris Hawkins, Catherine's nephew. Later, when defendant returned to the house for dinner, Maltba, who lived with the Barlowes, asked defendant and Catherine to come into the bedroom. He then told defendant he did not like to see the couple fighting and hoped they would work out their differences. Defendant became angry over Maltba's interference in his marriage and knocked a picture off the top of the dresser, striking Maltba. Maltba left on his motorcycle and drove to a trailer behind the home of Adair and Mavel Hawkins, Catherine Barlowe's parents. Defendant told Frye, Whisnant, and Hawkins to leave, and they followed Maltba to the trailer.

After defendant sat back down at the dinner table, his son, Matthew, asked for a new Nintendo game. When Matthew persisted after defendant told him "No," defendant again lost his temper and slapped him. Catherine took Matthew into the living room where they heard defendant breaking dishes in the dining room and threatening to get his gun. Catherine told Matthew to run to the car while she went into the bedroom to get her keys. She and Matthew got into the car and were attempting to drive out of the yard when defendant stepped out on the porch and began firing shots from his .30-.30 rifle. A bullet shattered the windshield and the passenger window. Several shards of glass hit Matthew causing him to believe he had been shot. Catherine and Matthew drove to a neighbor's home and hid in the bathtub.

Adair Hawkins testified that he and his wife lived three quarters of a mile from his daughter, Catherine, and defendant. On 21 December 1990 at approximately 8:00 p.m., Mr. Hawkins heard a motorcycle and then a car drive up his driveway and park. A few minutes later he heard a loud noise at the front door. His wife, Mavel, opened the front door and defendant, holding a rifle, demanded to see Catherine. As Mr. Hawkins stepped in front of his wife and opened the storm door, defendant shoved his gun inside the house and again demanded to see Catherine. Defendant pointed his gun at them during this entire exchange. He became quite angry when he learned that Catherine was not there and that the couple had not seen her all day. Still standing on the porch, defendant raised the gun to his shoulder and intentionally shot Mavel in the face. As she fell backwards, Mr. Hawkins heard a second shot ripping through the wall. As he knelt beside his wife, Mr. Hawkins realized she was dead. He stood up and said, "Lord, Tim, you killed my wife." Defendant replied, "You killed her, you killed

her." Wayne Maltba came into the house from the yard and telephoned for assistance.

Mr. Hawkins walked outside and found defendant standing on the grass in front of the steps. As he approached him, defendant struck him in the face with the barrel of the rifle. Mr. Hawkins fell to the ground and defendant pointed the rifle in his face. Mr. Hawkins begged defendant not to shoot him; when defendant could not get the gun to fire, he walked away. Maltba followed defendant into the house and wrestled the gun away from him.

Michael Frye, Rodney Whisnant, and Chris Hawkins each testified and corroborated the other witnesses. In addition, the three men testified that after staying at the trailer for about ten to twenty minutes, they decided to leave. As Maltba drove off on his motorcycle, defendant entered the Hawkins' driveway, hit Maltba with his van, and knocked him off the motorcycle. Defendant pointed his .22 rifle at Maltba and asked where Catherine was. The three men watched defendant walk towards the Hawkins' residence and then heard gunshots a few moments later.

Maltba's testimony was also corroborative, except on one point. After hearing the gunshot and running towards the house, Maltba testified he met defendant in the yard. Defendant again asked where Catherine was and then stated, "I shot Mavel, Adair grabbed the gun and it went off and hit Mavel."

Before resting, the State produced numerous expert witnesses who testified concerning the physical evidence. This evidence will be discussed in greater detail as necessary for a thorough understanding of each issue.

Defendant testified in his own defense and essentially corroborated the testimony of other witnesses regarding events leading up to the murder. He admitted drinking wine and vodka during the afternoon of 21 December 1990. He admitted that the alcohol may have had a minor influence on his actions that day but maintained that his behavior was fairly normal. Defendant admitted shooting at his wife's car but stated he did not realize his wife and son were in the car at the time. Before following Catherine and Matthew, defendant fired shots at two televisions, overturned numerous pieces of furniture and kitchen appliances, and destroyed other items inside his home. Defendant then traded his .30-.30 rifle for his .22 magnum rifle. When he arrived at the Hawkins' home, he knocked on the front door. Mavel

Hawkins opened the front door. Suddenly, his father-in-law confronted him and grabbed the rifle. The two men struggled, Mr. Hawkins lost his footing and fell backwards pushing the gun against the door casing. This contact caused the rifle to fire killing Mavel Hawkins. Defendant's father, mother, and sister verified that, on the night of the shooting, defendant told each of them this version of the shooting. Defendant further recalled telling Maltba that the rifle jerked when Mr. Hawkins grabbed it, but he did not recollect the rifle firing a second time. Defendant testified he struck Mr. Hawkins with his fist when he accused him of murdering his wife. Finally, defendant stated he loved Mavel Hawkins and did not intend to kill her.

[1] We first address defendant's contention that sufficient evidence existed tending to show defendant did not have the requisite intent to commit a felony when he entered the Hawkins' residence and that the trial court erred in refusing to instruct the jury on misdemeanor breaking or entering. This Court has held that

> [a] defendant is entitled to have the different permissible verdicts arising on the evidence presented to the jury under proper instructions, and error in failing to submit the lesser included offense is not cured by a verdict of guilty of the charged crime because it cannot be known whether the jury would have convicted on the lesser crime if it had been correctly submitted. However, this principle applies only when there is evidence of the crime of lesser degree.

*State v. Pearce*, 296 N.C. 281, 292, 250 S.E.2d 640, 648 (1979).

First-degree burglary is defined in North Carolina as the breaking and entering at night of the occupied dwelling house or sleeping apartment of another with the intent to commit a felony therein. *State v. Bell*, 285 N.C. 746, 208 S.E.2d 506 (1974), and N.C.G.S. § 14-51 (1993). Defendant was indicted and convicted of first-degree burglary with the intent to commit murder as the underlying felony. To support a conviction the State needed to prove that the intent to commit murder existed at the time of the breaking and entering, in this case, when the barrel of defendant's rifle protruded approximately two inches into the Hawkins' home through the front door. *State v. Williams*, 314 N.C. 337, 355, 333 S.E.2d 708, 720 (1985). If defendant did not possess the intent to commit a felony in the dwelling house at the time of a breaking and entering, he may properly be convicted only of misdemeanor breaking or entering. *Id.* The determining factor then is whether there was, as defendant contends, sufficient evidence

from which a reasonable juror could infer that defendant did not possess the requisite intent to commit murder.

The State presented evidence suggesting defendant intended to murder Mavel Hawkins at the moment he stuck his gun through the front door of her home. However, other conflicting evidence was also presented which suggested that the killing of Mavel Hawkins was accidental, not intentional. Defendant testified that (i) he loved Mavel Hawkins who was like a second mother to him; (ii) he did not intend to injure anyone when he went to the Hawkins' residence searching for his wife and son; (iii) his rifle occasionally discharged accidentally; (iv) he had activated the safety; and (v) the gun accidentally discharged on 21 December 1990 when Adair Hawkins grabbed for the barrel. The State's witness, Maltba, testified that defendant said to him moments after the shooting that "Adair jerked the gun and it went off." To determine whether this evidence is sufficient for submission of the lesser offense to the jury, we must view the evidence in the light most favorable to defendant. Applying this standard, we cannot say as a matter of law that the evidence does not permit a reasonable inference that defendant did not possess the requisite intent. The credibility of the evidence and whether in fact defendant did or did not possess the requisite intent is for the jury to decide.

We hold, therefore, that the trial court erred in not instructing the jury on the lesser-included offense of misdemeanor breaking or entering. The error is not cured by the guilty verdict of first-degree burglary since it cannot be known whether the jury would have convicted defendant of misdemeanor breaking or entering had it been properly instructed. *Pearce*, 296 N.C. at 292, 250 S.E.2d at 648.

For the reasons stated, defendant is entitled to a new trial on the first-degree burglary charge. This ruling does not affect defendant's first-degree murder conviction based on felony murder since the jury also found defendant guilty of felony murder with the predicate felony being discharging a firearm into occupied property. Defendant has not brought forward and argued in his brief the sole assignment of error related to his conviction for discharging a firearm into occupied property. Accordingly, this assignment of error is deemed abandoned and this conviction is not subject to review. N.C. R. App. P. 28(a).

[2] Defendant next contends the trial court erred in refusing to instruct the jury on the lesser-included offense of misdemeanor assault with a deadly weapon of his wife Catherine Barlowe. Defend-

**STATE v. BARLOWE**

[337 N.C. 371 (1994)]

ant was charged with assault with a deadly weapon with intent to kill and argues that conflicting evidence of defendant's intent was sufficient to submit the lesser-included misdemeanor assault which does not require intent to kill. *See* N.C.G.S. § 14-33(b)(1) (1993). The basis of his contention is defendant's own testimony that he was unaware that his wife and son were in the vehicle at the time he shot at the car.

The State bears the burden of proving intent and the assault with a deadly weapon does not establish a presumption of an intent to kill. *State v. Thacker*, 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972). Intent must normally be proved by circumstantial evidence, and "[a]n intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *Id.* Considered in light of these factors, the uncontradicted evidence supports a finding of defendant's intent to kill his wife, Catherine Barlowe. Defendant and his wife had argued; he was angry and was breaking dishes. Defendant said, "I'll get my gun." Defendant heard Catherine tell his son to get into the car, and the vehicle was moving when defendant fired at it with his .30-.30 rifle, hitting the front windshield slightly to the right of center on the passenger side. Defendant, with another rifle in hand, then searched for his wife and asked everyone he saw, "Where's Cathy?"

Even assuming arguendo defendant's testimony, that he was unaware his wife was in the car, was sufficient to permit submission of the lesser offense, the jury rejected this testimony when it found defendant guilty of discharging a firearm into an occupied vehicle. Hence, error, if any, by the trial court's failure to submit misdemeanor assault with a deadly weapon could not have been prejudicial to defendant under N.C.G.S. § 15A-1443(a). This assignment of error is overruled.

Defendant next contends the trial court, in its instruction on felony murder, improperly instructed the jury concerning the elements of burglary when murder was the underlying felony to support the charge of first-degree burglary. Defendant did not object at trial and asks this Court to apply plain error analysis. Inasmuch as this assignment of error relates to defendant's conviction for first-degree burglary and pertains to an instruction which likely will not reoccur during retrial on the first-degree burglary charge, we decline to address it.

[3] Defendant next contends the trial court erred by imposing separate sentences for each of the underlying felonies that supported

defendant's conviction for first-degree murder under the felony-murder rule. The jury found defendant not guilty of premeditated and deliberate murder but guilty of felony murder based on first-degree burglary and discharging a firearm into an occupied property as the underlying felony. The trial court sentenced defendant to life imprisonment for the first-degree murder conviction, life imprisonment for the first-degree burglary conviction, and ten years' imprisonment for the discharging a firearm into occupied property conviction. We agree with defendant that these multiple sentences constitute error and arrest judgment on the conviction for discharging a firearm into occupied property.

A murder is a felony murder when it is "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C.G.S. § 14-17 (1993). Application of the felony-murder rule requires that there be an interrelationship between the felony and the homicide. *State v. Strickland*, 307 N.C. 274, 291-94, 298 S.E.2d 645, 651-58 (1983). Our cases also firmly establish the principle that "a defendant may not be punished both for felony murder and for the underlying, 'predicate' felony, even in a single prosecution." *State v. Gardner*, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986). The underlying felony supporting a conviction for felony murder merges into the murder conviction. *State v. Silhan*, 302 N.C. 223, 262, 275 S.E.2d 450, 477 (1981). The underlying felony provides no basis for an additional sentence, and any judgment imposed thereon must be arrested. *Id.*

In the present case, the jury answered two separate, specific inquiries concerning felony murder, namely, (i) guilty of first-degree murder under the first-degree felony-murder rule with the underlying felony of burglary and (ii) guilty of first-degree murder under the first-degree felony-murder rule with the underlying felony of discharging a firearm into occupied property. In this respect, this case is distinguishable from *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987), where the trial court submitted the felony-murder issue in the disjunctive, and this Court could not determine whether the jury had found the defendant guilty of felony murder on the basis of felonious breaking or entering or robbery with a firearm. Since under the facts in *Pakulski* submission of felonious breaking or entering as an underlying felony for felony murder was error, this Court granted defendant a new trial on the first-degree murder charge. In so ruling, the Court stated:

The State contends that error in submitting the breaking or entering felony is harmless because the jury could have based its verdict solely on the robbery felony. The State's argument, while superficially appealing, overlooks that the verdict form does not reflect the theory upon which the jury based its finding of guilty of felony murder. Where the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant. *E.g.*, *State v. Belton*, 318 N.C. 141, 162, 347 S.E.2d 755, 768 (1986).

*Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326.

Only one underlying felony is necessary to support a felony-murder conviction, and in this case the record is clear the jury found that two separate felonies supported the first-degree murder conviction. Had there been no error in submission of the first-degree burglary charge, the trial court would have been required to arrest judgment on one of the underlying felony convictions but could have elected either the discharging a firearm into occupied property or the first-degree burglary conviction. To the extent *dicta* in the second opinion in *State v. Pakulski*, 326 N.C. 434, 437, 390 S.E.2d 129, 130 (1990), suggests the conviction for more than one underlying felony, if found, merges with the murder conviction thereby mandating that judgment on the multiple underlying felonies be arrested, that *dicta* is expressly disavowed. In this case, since there was error in submission of the first-degree burglary, requiring a new trial on that charge, we hold judgment on the discharging a firearm into occupied property conviction must be arrested.

[4] Defendant next assigns error to the trial court's refusal to instruct the jury on voluntary intoxication. Defendant contends that his voluntary intoxication would have negated the specific intent to commit burglary, one of the underlying felonies found by the jury in convicting defendant of felony murder. Voluntary intoxication is an affirmative defense negating the element of specific intent in a particular crime whenever the defendant satisfies the jury that he was so intoxicated at the time of the commission of the crime that he did not know what he was doing. *State v. Arnold*, 264 N.C. 348, 141 S.E.2d 473 (1965).

For defendant to be entitled to an instruction on voluntary intoxication, "the evidence must be that defendant's intoxication rendered him 'utterly incapable' of forming a deliberate and premeditated intent to kill." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (quoting *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987)). Evidence of mere intoxication is insufficient. *State v. Reeb*, 331 N.C. 159, 415 S.E.2d 362 (1992).

Wayne Maltba testified that on the afternoon of 21 December 1990 defendant drank approximately one fourth of a bottle of wine during lunch and two thirds of a bottle of vodka during the late afternoon and early evening. However, Maltba refused to state an opinion as to whether defendant was intoxicated. Catherine Barlowe testified she realized defendant had been drinking when he first returned home around 4:00 p.m. "but he didn't really appear to be totally intoxicated at that particular time. He was talking sensibly." Following their argument, defendant spent thirty to forty-five minutes in the shed drinking more vodka with Maltba, Frye, and Whisnant. When he returned, Catherine noted that defendant "was more intoxicated, he was reacting more like he had been drinking too much." Michael Frye testified that defendant "appeared to me like he was sort of drunk" while the men were in the shed but he acknowledged he could understand everything defendant said. Defendant estimated he drank two coffee cups full of vodka but, on cross-examination, denied he was intoxicated and claimed to have been acting normally on 21 December 1990.

Viewed in the light most favorable to defendant, this evidence tends to show that defendant consumed alcoholic beverages during the day and evening of 21 December 1990. Although the evidence suggests defendant was somewhat intoxicated, nothing in the record indicates that defendant's mind and reason were so completely overwhelmed by the alcohol that he was rendered incapable of forming the requisite intent to kill. The trial court found that "defendant's own testimony reveals that he said that he knew what he was doing, he knew where he was going, [and] that he was capable of thinking about the things that he was doing." We hold that the trial court did not err in refusing to instruct the jury on voluntary intoxication.

[5] Finally, defendant assigns error to the admission into evidence of five photographs depicting the extensive destruction of the contents of the Barlowe home. Defendant contends the photographs were irrelevant since he admitted destroying most of the property shown in

the photographs. Defendant testified that he shot at both televisions and turned over numerous pieces of furniture and kitchen appliances, including the refrigerator, before he followed Catherine and Matthew. Furthermore, three witnesses for the State had testified at length concerning the condition of the Barlowe home and their testimony needed no further illustration. As a result, defendant argues the photographs were, at best, minimally probative of defendant's intent to commit murder and were prejudicial and cumulative. We disagree.

Catherine Barlowe, Detective Marley, and John Bumgarner each testified for the State at trial and described the condition of the Barlowe home on 21 and 22 December 1990. The State offered the five photographs with the intent to further illustrate the hostility and ill will defendant felt towards his wife on the evening of the murder. The trial court, over objection, allowed the photographs to be admitted into evidence and later instructed the jury on the illustrative purpose of photographic evidence.

Rule 403 of the North Carolina Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-4, Rule 403 (1992). In the context of crime scene and autopsy photographs, this Court has held that "[w]hether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each likewise lies within the discretion of the trial court." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

> The test for excess is not formulaic: there is no bright line indicating at what point the number of crime scene or autopsy photographs becomes too great. The trial court's task is rather to examine both the content and the manner in which photographic evidence is used and to scrutinize the totality of circumstances composing that presentation.

*Id.*

The five photographs of the Barlowe home were not used excessively or repetitively during the trial. The introduction of the photographs was not aimed solely at arousing the passions of the jury. The photographs were admitted solely to illustrate the testimony of

Barlowe, Marley, and Bumgarner that on the night of 21 December 1990 defendant acted overtly hostile and with inexplicable violence towards his wife. The probative value of these photographs is not outweighed by any potential prejudice to defendant. This assignment of error is also without merit.

For the foregoing reasons, we find no error in defendant's trial for first-degree murder. However, we do find prejudicial error in the trial court's failure to instruct the jury on misdemeanor breaking or entering and, thus, we reverse the conviction for first-degree burglary and remand this case to the Superior Court, Caldwell County, for a new trial thereon. We further find that the trial court's failure to merge the underlying felonies into the first-degree murder conviction was error pursuant to the felony-murder rule. We, therefore, arrest judgment on the trial court's imposition of a ten-year sentence for discharging a firearm into occupied property.

NO. 90CRS11354—DISCHARGING FIREARM INTO OCCUPIED VEHICLE: NO ERROR.

NO. 90CRS11355—ASSAULT WITH DEADLY WEAPON WITH INTENT TO KILL CATHERINE H. BARLOWE: NO ERROR.

NO. 90CRS11358—FIRST-DEGREE MURDER OF MAVEL HAWKINS: NO ERROR.

NO. 92CRS1416—FIRST-DEGREE BURGLARY: NEW TRIAL.

NO. 92CRS1417—DISCHARGING FIREARM INTO OCCUPIED PROPERTY: JUDGMENT ARRESTED.