STATE OF NORTH CAROLINA v. MATEO FELIPE CASTANEDA

No. COA08-790

(Filed 7 April 2009)

**1. Appeal and Error— substantial appellate rules violations—invocation of Rule 2 to prevent manifest injustice**

Although defendant's noncompliance with N.C. R. App. P. 28(b)(6) in a first-degree murder case constituted a gross and substantial violation warranting dismissal under N.C. R. App. P.

34(a)(3), the exceptional circumstances of the case justified the Court of Appeals' invocation of N.C. R. App. P. 2 to review the merits of defendant's appeal in order to prevent manifest injustice, even though the better course for defendant would have been to amend his record on appeal.

**2. Criminal Law— deviation from requested instruction— accomplice—prejudicial error**

The trial court committed prejudicial error in a first-degree murder case by instructing the jury that the actual shooter was an accomplice because: (1) the transcript showed that during the charge conference the trial court agreed, at defendant's request, to modify the jury instructions to include the phrase "alleged accomplice," and the trial court deviated from the agreed upon instruction; (2) where the trial court charges correctly at one point and incorrectly at another, a new trial is necessary since the jury may have acted upon the incorrect part; (3) the trial court's attempt to clarify which person the trial court was referring to inadvertently resolved the disputed issue of fact for the jury; and (4) there was a reasonable possibility that, had the erroneous jury instruction not been given, a different result would have occurred.

Appeal by Defendant from judgment entered 8 November 2007 by Judge John W. Smith in Superior Court, Forsyth County. Heard in the Court of Appeals 11 February 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for Defendant-Appellant.*

McGEE, Judge.

Mateo Felipe Castaneda (Defendant) was found guilty by a jury on 8 November 2007 of first-degree murder of Fabrico Leopoldo Orellana (Orellana). Defendant was convicted on the theory that he aided and abetted the actual shooter, Christian Pacheco-Torres (Torres). The trial court sentenced Defendant to life imprisonment without parole. Defendant appeals.

The relevant evidence presented at trial tended to show that Orellana was shot and killed in front of the mailboxes outside his

apartment in Winston-Salem at 7:00 p.m. on 12 August 2005. Orellana's seven-year-old daughter, R.O., was in Orellana's car at the time and witnessed the shooting. R.O. told the police that her father got out of the car to check his mailbox when a man with a gun came up and shot him. She described the shooter as a Hispanic man wearing a white shirt with a skinned head and a tattoo on his neck.

The Winston-Salem Police Department obtained cell phone records (the records) showing calls to and from the cell phones owned by Orellana, Defendant, and Luz Orellana (Luz). Luz was Orellana's ex-wife and was currently married to Defendant. On the day of the shooting, the records showed calls from Defendant's cell phone to a telephone registered to Cecilia Contreras (Contreras). Investigators learned from a police database that Contreras was living with Torres, who matched the description of the shooter. Detective Stanley Nieves (Detective Nieves) with the Winston-Salem Police Department, called Torres at his job. Detective Nieves told Torres it was important that the police talk to him, and that detectives would come and pick him up at his place of employment. However, Torres fled before officers could arrive.

Torres was later charged with first-degree murder of Orellana. Torres was arrested in Texas on 27 December 2005 and brought to Forsyth County on 2 February 2006. Investigators attempted to interrogate Torres, but after being advised of his *Miranda* rights, Torres exercised his right to an attorney. Months later, Torres' attorney notified the State that Torres wanted to provide information about the case. When Torres was questioned by officers on 9 April 2007, he confessed to shooting Orellana. However, Torres stated that he was hired by Defendant and Luz to kill Orellana.

At trial, the jury heard two conflicting versions of events leading up to 12 August 2005. Torres testified that Luz, who was his co-worker, approached Torres at work and asked him to beat up her ex-husband, Orellana. Torres said Luz later told him she wanted him to kill Orellana. Torres testified that Luz and Defendant wanted Orellana dead because they felt Orellana was mistreating Luz's daughter, R.O. Torres testified regarding details of the plan to kill Orellana, including a promise by Luz and Defendant to pay Torres money to kill Orellana. Torres also testified about discussions he had with Luz and Defendant, as well as preparations they made, such as Luz and Defendant giving Torres a gun and taking him to Orellana's apartment complex.

Defendant testified that he knew Torres through Defendant's wife, Luz. However, Defendant denied asking Torres to kill Orellana, paying Torres to do so, or giving Torres a gun. Defendant admitted he and Luz were having difficulty with Orellana over Orellana's treatment of Luz's daughter. Defendant said he went to Orellana's apartment twice in order to try to talk with Orellana. Defendant said Torres had offered to come along as a witness to Defendant's confronting Orellana. Defendant admitted being at Orellana's apartment complex with Torres on the evening Orellana was killed. However, Defendant testified that while waiting in the car for Orellana to arrive, Defendant spoke with Luz on the phone. Luz told Defendant that Orellana had already picked up R.O. Defendant said he told Torres they would leave because Defendant did not want to talk to Orellana when R.O. was present. Defendant said Torres told Defendant to wait for him. Torres then got out of the car and went toward the apartments. When Torres ran back to the car, Defendant said he asked Torres what had happened and that Torres responded that "nothing" had happened and to "just go." Defendant testified he did not know Orellana had been shot and killed until the police notified him later that evening.

During the charge conference, the trial court inquired whether Defendant requested a jury instruction on accomplice testimony and Defendant's counsel said no. However, the State then requested the instruction. Defense counsel responded that the core issue of fact in the case was whether Torres was an accomplice. The trial court, defense counsel, and the State agreed to alter the pattern jury instruction to say that Torres was *alleged* to be an accomplice.

During jury instructions, the trial court did not give the modified jury instruction agreed to in the charge conference. Instead, the trial court gave the following jury instruction:

> I instruct you that the witness, Mr. Torres, *was an accomplice,* and you should examine every part of such a witness's testimony with the greatest care and caution. An accomplice is a person who joins with another in the commission of a crime. *The accomplice—and in this case, Mr. Torres—*may actually take part in the acts necessary to accomplish the crime or may knowingly help and encourage another in the commission of the crime, either before or during its commission.

(emphasis added). Defendant argues that the trial court committed prejudicial error by giving the above jury instruction instead of the instruction agreed upon in the charge conference.

STATE v. CASTANEDA

[196 N.C. App. 109 (2009)]

I.

[1] We first address the State's contention that we should overrule Defendant's argument that the trial court erred because Defendant's assignment of error and argument in his brief do not correspond, in violation of N.C.R. App. P. 28(b)(6). In his brief, Defendant references assignment of error number nine in which Defendant argues that the trial court committed plain error in instructing the jury that Torres was an accomplice in the case. However, in Defendant's accompanying argument he argues that the trial court committed prejudicial error in giving the wrong jury instruction.

We note that " '[c]ompliance with the rules [of Appellate Procedure] . . . is mandatory.' " *Azar v. Presbyterian Hosp.*, 191 N.C. App. 357, 369, 663 S.E.2d 450, 452 (2008) (quoting *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 194, 657 S.E.2d 361, 362 (2008)). N.C.R. App. P. 28(b)(6) states "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated . . . will be taken as abandoned." *See State v. Price*, 170 N.C. App. 672, 675, 613 S.E.2d 60, 63 (2005); *State v. Lemonds*, 160 N.C. App. 172, 180, 584 S.E.2d 841, 846 (2003). Additionally, because Defendant's argument does not correspond to his assignment of error, his argument is also deemed abandoned. *See Guerrier v. Guerrier*, 155 N.C. App. 154, 159-60, 574 S.E.2d 69, 72 (2002) (citing *State v. Purdie*, 93 N.C. App. 269, 278, 377 S.E.2d 789, 794 (1989)).

Defendant's violations of N.C.R. App. P. 28(b)(6) are non-jurisdictional in nature. Therefore, pursuant to *Dogwood*, we must

> first determine whether the noncompliance is substantial or gross under Rules 25 and 34. If [we] so [conclude], [we] should then determine which, if any, sanction under Rule 34(b) should be imposed. Finally, if [we] [conclude] that dismissal is the appropriate sanction, [we] may then consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal.

*Dogwood*, 362 N.C. at 201, 657 S.E.2d at 367.

In order to evaluate whether appellate rules violations are "substantial" or "gross" we may consider "whether and to what extent the noncompliance impairs [our] task of review and whether and to what extent review on the merits would frustrate the adversarial process." *Dogwood*, 362 N.C. at 200, 657 S.E.2d at 366-67. Even when a non-

STATE v. CASTANEDA

[196 N.C. App. 109 (2009)]

jurisdictional violation is "substantial" or "gross," our Supreme Court has expressed a "systemic preference" for sanctions other than dismissal in order to review the merits of the appeal whenever possible. *Dogwood*, 362 N.C. at 200, 657 S.E.2d at 366. However, in *Dogwood*, our Supreme Court further noted that "in certain instances noncompliance with a discrete requirement of the rules may constitute a default precluding substantive review." *Dogwood*, 362 N.C. at 200, 657 S.E.2d at 367. Our Supreme Court specifically referenced a violation of N.C.R. App. P. 28(b)(6) as an example of when a default may preclude substantive review. *Id.*

Defendant violated N.C.R. App. P. 28(b)(6) when he failed to argue plain error, and instead argued prejudicial error, for which there was no corresponding assignment of error in the record. Defendant's violations substantially impair this Court's task of review by presenting two different bases for error, neither of which fully comply with the North Carolina Rules of Appellate Procedure, making it unclear to the Court which error is Defendant's intended argument. *See Jones v. Harrelson & Smith Contrs., LLC*, 194 N.C. App. ——, ——, 670 S.E.2d 242, 256-57 (2008) (stating "broadside" and "ineffective" assignments of error do not present any arguable issues for the Court to review and therefore warrant dismissal of the appeal). Further, Defendant's failure to set out "prejudicial error" in his assignments of error, frustrates the adversarial process by failing to give notice to the other party of Defendant's intended arguments at the time of settlement of the record on appeal. Due to these considerations, in addition to the language of *Dogwood* that violations of N.C.R. App. P. 28(b)(6) may constitute default precluding substantive review, we find Defendant's rule violations are "substantial" and "gross" and warrant dismissal of the appeal under N.C.R. App. P. 34(a)(3).

Although we find that Defendant's noncompliance with the rules constitutes a "gross" and "substantial" violation warranting dismissal, we next consider, according to the procedure outlined in *Dogwood*, whether the circumstances of the case before us justify invoking N.C.R. App. P. 2 to reach the merits of the appeal. *Dogwood*, 362 N.C. at 201, 657 S.E.2d at 367. Rule 2 of the North Carolina Rules of Appellate Procedure allows this Court to reach the merits of an appeal to "prevent manifest injustice to a party." However, this Court should only invoke Rule 2 on "rare occasions" and under "exceptional circumstances." *Id.* (citing *State v. Hart*, 361 N.C. 309, 316, 644 S.E.2d 201, 205 (2007)). Our Courts "[have] tended to invoke Rule 2 for the prevention of 'manifest injustice' in circumstances in which substan-

tial rights of an appellant are affected." *Hart*, 361 N.C. at 316, 644 S.E.2d at 205.

In the case before us, Defendant faces life imprisonment and makes a compelling argument that the trial court's error prejudiced him. Given the circumstances of this case, to ignore Defendant's argument would be manifestly unjust and we are therefore compelled to invoke Rule 2 under these exceptional circumstances. *See State v. Batchelor*, 190 N.C. App. 369, 377-78, 660 S.E.2d 158, 164 (2008). However, we note that although in this case we elect to use our discretion under Rule 2 to review the merits of Defendant's appeal, the better course for Defendant would have been to amend his record on appeal. N.C.R. App. P. 9(b)(5) states that "[o]n motion of any party the appellate court may order any portion of the record on appeal or transcript amended to correct error shown as to form or content." When Defendant's counsel determined that Defendant had preserved his objection to the jury instructions at trial and wanted to argue prejudicial error rather than the more stringent plain error, Defendant's counsel should have moved to amend the assignments of error, preventing the need to invoke Rule 2 to reach the merits of the case.

## II.

[2] Defendant argues the trial court committed prejudicial error by instructing the jury that Torres was an accomplice. The State argues Defendant failed to preserve his objection because Defendant failed to object to the jury instructions when the trial court gave the erroneous instruction. At the end of the jury instructions, the trial court gave Defendant an opportunity to offer any corrections or additions to the jury instructions. Although N.C.R. App. P. 10(b)(2) requires a party to affirmatively object to the jury instructions before the jury retires,

> a request for an instruction at the charge conference is sufficient compliance with [Rule 10(b)(2)] to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

*State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988). *See also State v. Keel*, 333 N.C. 52, 56-57, 423 S.E.2d 458, 461 (1992); *State v. Montgomery*, 331 N.C. 559, 570, 417 S.E.2d 742, 748 (1992).

The transcript clearly shows that during the charge conference the trial court agreed, at Defendant's request, to modify the jury

instructions to include the phrase "alleged accomplice." The trial court erred by deviating from the agreed upon instruction. However, an error in jury instructions is prejudicial and requires a new trial only if "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007). *See also State v. Maske*, 358 N.C. 40, 57, 591 S.E.2d 521, 532 (2004). The defendant has the burden of demonstrating prejudice. N.C. Gen. Stat. § 15A-1443(a) (2007).

In the case before us, the trial court gave the following instruction to the jury:

> I instruct you that the witness, Mr. Torres, *was an accomplice*, and you should examine every part of such a witness's testimony with the greatest care and caution. An accomplice is a person who joins with another in the commission of a crime. *The accomplice—and in this case, Mr. Torres*—may actually take part in the acts necessary to accomplish the crime or may knowingly help and encourage another in the commission of the crime, either before or during its commission.

(emphasis added). Defendant argues that because he was charged with first-degree murder on the theory that he aided and abetted the actual shooter, whether or not Torres was an accomplice was a disputed issue of fact for resolution by the jury that went to the heart of the case. Defendant contends that by giving the above instruction, the trial court answered the disputed issue of fact which was the linchpin in determining Defendant's guilt or innocence.

The State relies on the doctrine of "lapsus linguae" to argue that the trial court's erroneous jury instruction was not prejudicial to Defendant. The State contends that the jury could not have been confused by the trial court's failure to state that Torres was "alleged" to be an accomplice. Our Supreme Court has held that a slip of the tongue "not called to the attention of the trial court when made will not constitute prejudicial error when it is apparent from a contextual reading of the charge that the jury could not have been misled by the instruction." *State v. Baker*, 338 N.C. 526, 565, 451 S.E.2d 574, 597 (1994); *See also State v. Hazelwood*, 187 N.C. App. 94, 101-02, 652 S.E.2d 63, 68 (2007), *cert. denied*, 363 N.C. 133, —— S.E.2d —— (2009). In *Baker*, the trial court erroneously instructed the jury to find the defendant *guilty* if they had reasonable doubt. *Baker*, 338 N.C. at 564, 451 S.E.2d at 597. However, the trial court made this error only once,

and repeatedly instructed the jury that the State had the burden of proving the defendant was guilty beyond a reasonable doubt. *Baker*, 338 N.C. at 565, 451 S.E.2d at 597. Therefore, our Supreme Court held in *Baker* that the trial court's slip of the tongue did not constitute prejudicial error. *Id.*

The case before us is distinguishable from *Baker*. In the present case, the trial court *twice* identified Torres as an accomplice and further, defined accomplice as "a person who joins with another in the commission of a crime." Although the trial court later correctly instructed the jury that the State was required to prove that Defendant "knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime," this instruction did not cure the earlier error. " '[W]here the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part. This is particularly true when the incorrect portion of the charge is the application of the law to the facts.' " *State v. Harris*, 289 N.C. 275, 280, 221 S.E.2d 343, 347 (1976) (quoting *State v. Parrish*, 275 N.C. 69, 76, 165 S.E.2d 230, 235 (1969)). "It must be assumed on appeal that the jury was influenced by that portion of the charge which is incorrect." *Id.* (citing *State v. Starnes*, 220 N.C. 384, 386, 17 S.E.2d 346, 347 (1941)).

> It has long been held in this State that even the slightest intimation from a judge as to the strength of the evidence, or as to the credibility of a witness, will always have great weight with a jury; and, therefore, the court must be careful to see that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial.

*State v. McLean*, 17 N.C. App. 629, 632, 195 S.E.2d 336, 338 (1973) (citing *State v. Ownby*, 146 N.C. 677, 61 S.E. 630 (1908)). "[I]t is error for the trial judge to intimate that controverted facts have or have not been established." *Id.* (citing *State v. Hall*, 11 N.C. App. 410, 181 S.E.2d 240 (1971)). Further, N.C. Gen. Stat. §§ 15A-1222 and 15A-1232 prohibit the trial court from expressing any opinion in the presence of the jury on any question of fact to be decided by the jury. N.C. Gen. Stat. §§ 15A-1222 and 15A-1232 (2007).

In the case before us, Defendant admitted at trial that he knew Torres and was with Torres at the apartment complex where Orellana was killed on the night of the murder. The only issue in dispute at trial was whether Defendant joined Torres in the commission of the shooting or whether Torres was acting alone. We acknowledge that the trial

court's error occurred during the attempt to clarify which person the trial court was referring to—Defendant versus Torres. However, in so doing, the trial court unfortunately inadvertently erred such that the trial court resolved the disputed issue of fact for the jury. In light of the severity of the error, we cannot find that the full jury instructions remedied the error. We find that because the jury instructions resolved the factual issue in dispute, there is a reasonable possibility that, had the erroneous jury instruction not been given, a different result would have occurred.

For the reasons stated, Defendant must be granted a new trial.

New trial.

Judges JACKSON and HUNTER, JR. concur.