An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1400

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

v.                                    Gaston County
                                      No. 12 CRS 11164
JEFFREY SCOTT HUGHES


Appeal by defendant from judgments entered 24 July 2013 by Judge Jesse B. Caldwell, III in Gaston County Superior Court. Heard in the Court of Appeals 22 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Steven M. Arbogast, for the State.*

> *Russell J. Hollers III, for defendant-appellant.*


HUNTER, Robert C., Judge.


Jeffrey S. Hughes ("defendant") appeals from judgments entered after a jury found him guilty of one count each of first degree murder based on the felony murder rule, possession of a firearm by a felon, and discharging a weapon into an occupied dwelling. On appeal, defendant argues that the trial court erred by: (1) instructing the jury that it could convict on felony murder for the underlying crimes of buying or selling a

controlled substance while using a firearm where those crimes either (a) did not support a felony murder conviction, or (b) were not supported by the evidence; (2) giving a mistaken instruction on acting in concert for the crime of discharging a firearm into an occupied dwelling; and (3) failing to give defendant accurate credit during sentencing for the days he spent in prison awaiting trial.

After careful review, we find no prejudicial error as to the jury instructions and dismiss defendant's contention regarding credit for pretrial confinement.

**Background**

The events of this case took place at 969 Brown Street in Gastonia, N.C. ("the Brown Street home"). Three generations of the Wright family lived at the Brown Street home – David Wright ("David"), his father, Jimmy David Wright ("Jimmy"), and Jimmy's parents, Vicky and Jimmy Carl Wright. In the late evening hours of 22 August 2011, Victor Malagon ("Malagon") called David and arranged to purchase prescription pills from him. Malagon regularly purchased pills from David and Jimmy. On the night in question, Malagon was driven to the Brown Street home by defendant. Inside the vehicle was another passenger, Amanda Mabe ("Amanda").

After they arrived, Malagon went inside and purchased over $400.00 worth of Oxycodon pills from David, which David estimated at trial to be around twenty pills. While they were conducting the sale inside, Jimmy had returned home and saw defendant's vehicle in the driveway. Jimmy testified that about a month-and-a-half prior to his encounter on 22 August 2011, he had purchased thirty Percocet pills from defendant at a total cost of $600.00. Jimmy thought that the pills defendant sold him were fake. Because Jimmy only knew defendant through Malagon, Jimmy tried to get Malagon to arrange another meeting with defendant so that he could get his $600.00 back, but before the night in question he had been unsuccessful.

When Jimmy saw defendant in his driveway, he confronted him about the allegedly fake pills that defendant had sold him. When Malagon and David exited the Brown Street home, Jimmy told Malagon to take five of the pills he had just purchased and put them on the porch rail. Jimmy said that this would constitute a down payment on the money defendant owed him from their previous transaction. Malagon put five pills on the porch rail then handed the rest of the pills to defendant. Defendant and Jimmy began shouting at each other, and Jimmy pointed his handgun at

defendant. Defendant shouted "this is not right," and that "somebody will have to pay."

After the shouting altercation, defendant began backing out of the driveway. At this time Amanda had gotten out of the car and was standing next to Jimmy near David's truck. Jimmy had tucked his handgun into his jeans and was no longer pointing it at defendant. As he was backing out of the driveway, defendant started shooting toward the house. Jimmy heard Amanda say "Oh God" and then saw her immediately fall to the ground. Detective Robert Bryson ("Detective Bryson") was on patrol near the Brown Street home that night and heard gunshots; he was the first officer at the scene. Detective Bryson approached Amanda and checked her vital signs, but could not feel a pulse. An autopsy later established that Amanda died from a single gunshot wound to the back that completely severed her spinal cord, lacerated her aorta, and perforated her left lung.

Vicky Wright, David's grandmother and Jimmy's mother, testified that she noticed bullet holes in her home that were not there prior to the night of the shooting. Detective Michael Schwartz of the Gastonia Police Department investigated the Brown Street home and testified that he observed two bullet holes in the side of the house. One projectile did not enter

the interior of the home, but the second projectile went through the exterior wall, a bathroom wall, and a kitchen wall before finally settling in the opposite kitchen wall above the refrigerator.

Defendant was arrested on the night of the shooting. Police recovered numerous 9-millimeter shell casings in and around the driver's side door of defendant's vehicle when they detained him, and after obtaining a search warrant, they found a 9-millimeter Smith & Wesson handgun under the passenger seat.

Defendant was indicted for first degree murder, possession of a firearm by a felon, and discharging a firearm into an occupied dwelling. The jury rejected the theory of premeditation and deliberation but convicted defendant for first degree murder under the felony murder rule. The underlying felonies for which the jury found defendant guilty of first degree murder under the felony murder rule were: (1) discharging a firearm into an occupied dwelling; and (2) using a deadly weapon in the sale or attempted sale of a controlled substance. The jury also convicted defendant for the charges of possession of a firearm by a felon and discharging a weapon into an occupied dwelling, the latter of which was arrested because it was an underlying felony supporting the murder conviction. The

trial court sentenced defendant to life imprisonment without parole for first degree murder and a concurrent term of 14 to 17 months imprisonment for possession of a firearm by a felon. Defendant gave timely notice of appeal.

**Discussion**

**I. Instruction as to the Sale of a Controlled Substance**

Defendant first argues that the trial court erred by instructing the jury that it could convict under the felony murder rule for buying or selling a controlled substance while using a firearm. We find no prejudicial error.

"[A]n error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (citation and quotation marks omitted). An instruction about a material matter must be based on sufficient evidence. *See Childress v. Johnson Motor Lines, Inc.*, 235 N.C. 522, 530, 70 S.E.2d 558, 564 (1952). However, "[i]t is well established that 'the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is

correct.'" *State v. Hornsby*, 152 N.C. App. 358, 367, 567 S.E.2d 449, 456 (2002) (quoting *State v. Boykin*, 310 N.C. 118, 125, 310 S.E.2d 315, 319 (1984)).

Here, the State requested that the trial court instruct the jury that it could convict defendant of felony murder if it found that he either shot into an occupied dwelling or took "a deadly weapon . . . to a drug deal." Over defendant's objection, the trial court instructed the jury as follows:

> [M]embers of the jury, if you find beyond a reasonable doubt that on or about the alleged date the defendant, acting either by himself or together with someone else, . . . knowingly sold or attempted to sell, or purchased or attempted to purchase a controlled substance in which a firearm was involved or used in the commission of that offense, . . . then it would be your duty to return a verdict of guilty of first degree murder under the felony murder rule.

After the jury requested to be instructed again on the murder charge, the trial court reiterated that:

> [F]or you to find that the defendant was committing or attempting to commit the sale or attempted sale of controlled substance where a deadly weapon is used in its commission, the State would have to prove beyond a reasonable doubt, and you would have to find beyond a reasonable doubt that the State had proven that the defendant knowingly sold or attempted to sell, or purchased or attempted to purchase a controlled substance.

Defendant argues that this instruction was erroneous for two reasons: (1) evidence did not support an instruction on selling or attempting to sell a controlled substance, because defendant was not involved in selling pills during this transaction, and (2) buying or attempting to buy a controlled substance is a misdemeanor under N.C. Gen. Stat. §§ 90-90(1)(a)(14) and -95(d)(2), not a felony, and therefore cannot support a conviction for first degree murder under the felony murder rule as a matter of law.

However, the jury returned its verdict sheet convicting defendant for first degree murder based on *two* underlying felonies: (1) "sale or attempted sale of controlled substance where a deadly weapon is used in its commission"; and (2) "discharging a firearm into an occupied dwelling."  Thus, this case is comparable to *State v. Barlowe*, 337 N.C. 371, 446 S.E.2d 352 (1994).  In *Barlowe*, the defendant was convicted for first degree murder under the felony murder rule based on two underlying felonies: burglary and discharging a firearm into occupied property.  *Id.* at 378, 446 S.E.2d at 357.  The Court held that "[o]nly one underlying felony is necessary to support a felony-murder conviction, and in this case the record is clear that the jury found that two separate felonies supported the

first-degree murder conviction." *Id.* at 381, 446 S.E.2d at 358. Thus, even though there was error in the submission of burglary to the jury due to lack of evidence of that crime, the judgment for first degree murder was not disturbed, as it was supported by a separate underlying felony for which there was ample supporting evidence. *Id.*

Here, like in *Barlowe*, defendant's conviction for first degree murder was premised on two independent felonies: selling or attempting to sell a controlled substance while using a deadly weapon and discharging a firearm into an occupied dwelling. Defendant does not dispute that there was sufficient evidence to support the charge of discharging a firearm into an occupied dwelling; indeed, the undisputed record evidence shows that defendant willfully discharged a firearm toward the Brown Street home and a bullet fired from that firearm went through multiple walls of the home before settling in the kitchen wall. *See* N.C. Gen. Stat. § 14-34.1 (2013) ("Any person who willfully or wantonly discharges a weapon . . . into an occupied dwelling . . . is guilty of a Class D felony.")

Thus, because there was a separate underlying felony supporting the conviction for first degree murder under the felony murder rule, we conclude that defendant has not

demonstrated a reasonable possibility that a different outcome would have occurred but for the trial court's instruction as to the sale of a controlled substance. *See Castaneda*, 196 N.C. App. at 116, 674 S.E.2d at 712. This argument is overruled.

## II. Instruction as to Acting in Concert

Defendant next argues that the trial court erred by initially instructing the jury that it could convict defendant for discharging a firearm into an occupied dwelling if he acted with a common purpose with someone else to do so. Defendant asserts in his brief on appeal that "evidence showed that [defendant] was either guilty of shooting into the Wrights' home by himself or not at all."

It is clear from the record that the trial court did initially instruct the jury that it could apply the theory of acting in concert to the felony of discharging a firearm into an occupied dwelling. However, upon realizing the error, the trial court corrected itself and instructed the jury that the theory of acting in concert was only applicable to the underlying felony of selling or attempting to sell a controlled substance while using a deadly weapon, not the felony of discharging a firearm into an occupied dwelling. "[W]hen a trial judge makes an improper instruction earlier in the charge and then corrects

it, the error is completely lacking in prejudicial effect." *State v. Reid*, 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994) (citation and internal quotation marks omitted). Thus, given that the trial court's initial error is "completely lacking in prejudicial effect," *id.*, due to its later correction, defendant has failed to meet his burden of establishing prejudice by this error. *See Castaneda*, 196 N.C. App. at 116, 674 S.E.2d at 712. Thus, his argument is overruled.

### III. Confinement Credit

Defendant's final argument is that the trial court erred by failing to accurately credit defendant for the time he spent in jail awaiting trial. Under N.C. Gen. Stat. § 15-196.1 (2013), a defendant shall be credited with any amount of time spent in confinement as a result of the charge that culminated in the sentence. Here, the transcript shows that the trial court directed the clerk of court to credit the number of days defendant spent in pretrial confinement, but no specific amount of credit was included in the judgment. Thus, it appears that defendant is entitled to at least some amount of credit. However, this argument is not properly before us. *See State v. Miller*, 205 N.C. App. 291, 295, 695 S.E.2d 149, 152 (2010). This Court has held that:

> [T]he proper procedure to be followed by a defendant seeking to obtain credit for time served in pretrial confinement in addition to that awarded at the time of sentencing or the revocation of the defendant's probation is for the defendant to initially present his or her claim for additional credit to the trial court, with alleged errors in the trial court's determination subject to review in the Appellate Division following the trial court's decision by either direct appeal or certiorari, as the case may be. Such an approach makes sense given the reality that, in at least some instances, factual issues will need to be resolved before a proper determination of the amount of credit to which a particular defendant is entitled can be made, and such issues are best addressed, as an initial matter, in the trial courts rather than in the Appellate Division.

*Id.* (quoting *State v. Cloer*, 197 N.C. App. 716, 720-21, 678 S.E.2d 399, 402-03 (2009) (dismissing without prejudice the defendant's contention on appeal that he was entitled to additional credit for time served in pretrial confinement)). Thus, we are unable to address the merits of defendant's contention. However, as was noted in *Miller* and *Cloer*, defendant maintains the right to "file a motion for an award of additional credit in the superior court of [Gaston] County pursuant to N.C. Gen. Stat. § 15-196.4." *Miller,* 205 N.C. App. at 295, 695 S.E.2d at 152; *Cloer*, 197 N.C. App. at 722, 678 S.E.2d at 404.

## Conclusion

Because defendant has failed to establish a reasonable possibility of a different outcome but for the trial court's alleged errors in its jury instructions, we conclude that any such errors were not prejudicial. Defendant's argument as to pretrial confinement is dismissed without prejudice.

NO PREJUDICIAL ERROR IN PART; DISMISSED IN PART.

Judges BRYANT and STEELMAN concur.

Report per Rule 30(e).